**MARTINA THEATRE CORPORATION,**
Plaintiff-Appellant,

v.

**SCHINE CHAIN THEATRES, INC., et al.,**
Defendants-Appellees.

No. 257, Docket 25966.

United States Court of Appeals
Second Circuit.

Argued April 1, 1960.

Decided May 13, 1960.

Francis T. Anderson, Philadelphia, Pa., for plaintiff-appellant.

Robert M. Hitchcock, Buffalo, N. Y. (Kenefick, Letchworth, Baldy, Phillips & Emblidge, Buffalo, N. Y., on the brief), for defendants-appellees Schine, etc.

James O. Moore, Jr., Buffalo, N. Y. (Raichle, Moore, Banning and Weiss, Buffalo, N. Y., on the brief), for Paramount Pictures, Inc. and other distributor defendants-appellees.

Everett A. Frohlich, New York City (Schwartz & Frohlich, New York City, on the brief), for Columbia Pictures, Inc., defendant-appellee.

Before LUMBARD, Chief Judge, FRIENDLY, Circuit Judge, and J. JOSEPH SMITH, District Judge.*

FRIENDLY, Circuit Judge.

In 1939 the government instituted a civil antitrust suit in the Western District of New York against the present defendants J. Myer Schine, Louis W. Schine, John A. May, and various corporations controlled by them (hereinafter collectively called Schine or the Schine defendants). The government alleged that the Schine defendants had imposed unlawful restraints on competition in the exhibition of motion pictures throughout the area, primarily Western New York and Ohio, where their theatre chain operated. After a Supreme Court decision, Schine Chain Theatres v. United States, 1948, 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1245, sustaining the charge of antitrust violation and remanding the case to the District Court for findings on the extent to which divestiture should be decreed, the parties agreed upon a consent decree. Among the terms of this decree was a requirement that Schine sell the Capitol Theatre in Oswego, New York, and the Pontiac Theatre in Ogdensburg, New York. In 1950 the two theatres were sold to the plaintiff in the present action, hereinafter called Martina.

Plaintiff's operation of the two houses not being successful, it instituted in the District Court for the Western District of New York, in September, 1951, a treble-damage action under the antitrust laws against the Schine defendants and the major distributors of motion pic-

---

* Sitting by designation.

tures. Plaintiff alleged that defendants had conspired to prevent Martina from obtaining first-run films on terms comparable to those afforded Schine and that Schine had engaged in various other predatory practices in the operation of the first-run houses it had retained in Oswego and Ogdensburg.

On January 22, 1952, on a stipulation of the parties, the district judge entered a judgment of dismissal with prejudice in the treble-damage action. Plaintiff executed a release and a covenant not to sue, and its shareholders executed a consent to settlement of the claim against the defendants, for $23,000. A short time prior to the dismissal, Martina had leased the Oswego and Ogdensburg theatres to Oswog Corporation for ten years at a rental of $18,000 per year. In an affidavit executed at the time of settlement, plaintiff's president, Charles V. Martina, stated that he had earlier suggested to Schine that it lease the two theatres but had been informed that the necessary Department of Justice approval would not be obtainable; that he had thereafter approached Elmer Lux, an officer of Darnell Theatres, Inc. and carried on negotiations that ultimately resulted in the lease to the Oswog Corporation; that this lease was entirely "separate and distinct" from the settlement; and that "none of the defendants influenced or attempted to influence, nor were they or any of them instrumental in any way in the negotiations leading to or the actual leasing of said theatres at Oswego and Ogdensburg, N. Y."

This statement, which had been prepared by Antevil, an officer of Schine, was false in important respects. As found by the District Court in a judg-ment entered in 1956 convicting the Schine defendants of criminal contempt for violation of the antitrust decree, United States v. Schine, Crim. No. 6279–C, W.D.N.Y.Dec. 28, 1956, affirmed 2 Cir., 1958, 260 F.2d 552, certiorari denied 1959, 358 U.S. 934, 79 S.Ct. 318, 3 L.Ed. 2d 306, the Schine defendants used Darnell Theatres, Inc., a controlled corporation, secretly to reacquire the Oswego and Ogdensburg theatres although the decree permitted this only upon an affirmative showing that such action would not unreasonably restrain competition, and "J. Myer Schine participated in the negotiations through which the Pontiac and Capitol Theatres were acquired."

In September 1953, the plaintiff brought the present action to have the 1952 judgment dismissing its treble-damage suit and the releases set aside thereby permitting it to reinstate its antitrust complaint. The plaintiff alleged that the "prime consideration" for discontinuing the action had been the leasing of the two theatres by Schine; that Schine had formed a dummy corporation, Oswog, for the purpose of defrauding the plaintiff; and that Oswog had failed to pay the rent for the past three months and had damaged the theatres.[1] After defendants had moved for summary judgment, plaintiff in January, 1954, filed an amended complaint, this time specifically alleging that the settlement was procured through fraud in that the Schine defendants falsely represented that Oswog Corporation had "substantial assets and financial support." And there was a new allegation, that the settlement was "procured from plaintiff by means of duress" since the defendants' continuing antitrust violations had been causing severe losses in the operation of the theatres.

[1] We note that the present action was not brought within one year of the entry of judgment pursuant to the settlement, the time limit for a motion under Fed.R.Civ. Proc. 60(b) (3), 28 U.S.C.A., for relief from a judgment for fraud. However, that rule saves the power of a court "to entertain an independent action to relieve a party from a judgment, order, or proceeding." When such an action is brought in the federal court that rendered the initial judgment, there is ancillary jurisdiction over the action despite absence of a federal question or diversity of citizenship. Pacific R. R. v. Missouri Pacific Ry. Co., 1884, 111 U.S. 505, 4 S. Ct. 583, 28 L.Ed. 498. The District Court for the Western District of New York thus had jurisdiction in the present case.

Matters remained in this status for some years during the pendency of the government's criminal contempt proceedings. In June, 1958, the defendants renewed their motions for summary judgment. Plaintiff moved for leave to file a second amended complaint. Judge Burke ruled in defendants' favor. He held that plaintiff was not entitled to equitable relief since, by plaintiff's own admission, it had knowingly engaged in a plan to violate the consent decree against Schine and "If, as the plaintiff asserts, the settlement was illegal and fraudulent, the plaintiff was knowingly and for its own benefit a party to the fraud."

On appeal plaintiff contends that the district court's reliance on the clean-hands doctrine was unjustified since, as plaintiff alleged, the settlement was procured through duress and plaintiff was thus not *in pari delicto;* defendants assert that any possible gradations in degree of fault are irrelevant. We think the question of application of the clean-hands doctrine more debatable than did Judge Burke. In contrast to Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 1945, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 and Mas v. Coca Cola Co., 4 Cir., 1947, 163 F.2d 505, on which appellees rely, equity would not here be enforcing the illegal transaction but restoring the *status quo ante.* Cf. 67 Harv.L.Rev. 1079 (1954), as to setting aside collusive divorces fraudulently obtained, and 6 Williston, Contracts § 1739, at 4920 (rev. ed. 1938) as to setting aside transfers in fraud of creditors obtained by fraud or duress. However, we find it unnecessary to resolve the point, at least in the broad context here discussed. For we think the complaint was properly dismissed on the ground that, clean hands apart, it set forth no sufficient claim for the equitable relief sought.[2]

Construing plaintiff's somewhat ambiguous pleadings with the liberality appropriate when the case is in this posture, we find suggestions of three distinct bases for equitable relief against the settlement.

The first relates to the fact, subsequently found by the district court in the criminal contempt proceedings and not disputed here, that the leasing of the theatres to Oswog was a violation of the consent decree in the government action. Both parties have at times characterized the settlement, of which the lease arrangement was a secret provision, as a "fraud on the court." Were the characterization accurate, the defrauded district court would have been empowered to take action *sua sponte* to expunge the judgment, and we would suppose that anyone, whether his hands were clean or dirty, could suggest that it do so. Indeed, as much is indicated by Hazel-Atlas Glass Co. v. Hartford-Empire Co., 1944, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250. However, Professor Moore suggests that "fraud on the court" is limited to "that species of fraud which does or attempts to defile the court itself * * * so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." 7 Moore, Federal Practice ¶60.33, at 512. For example, in Hazel-Atlas Glass Co. v. Hartford-Empire Co., supra, the Supreme Court upheld the power of the court of appeals to vacate a judgment in a patent case that may have been entered in reliance on an article, supposedly part of the prior art, that in fact was fabricated by one of the parties. Nothing of that sort is before us now. When the parties moved for a dismissal of the treble damage suit with prejudice pursuant to stipulation, the district court had no duty to ascertain whether the settlement conformed with the antitrust laws in general or with the consent decree in particular; it sufficed for the court to know the parties had decided to settle, without inquiring why. See Note, 72 Harv.L.Rev. 1314, 1327 (1959). Compare Fed.R.Civ.Proc. 23(c). Neither did the settlement impair the judicial functioning of the District Court

---

2. This applies equally to the proposed second amended complaint.

in connection with the consent decree, as would have been the case if a false statement had been made in securing approval of a lease to or purchase by the Schine defendants. That step was simply bypassed. It was for the government to protect its antitrust judgment and, as noted above, it moved promptly and effectively to that end.

■ We likewise cannot accept plaintiff's second suggested ground, of duress. For the financial hardship alleged to have forced plaintiff to accept the settlement flowed from the same alleged unlawful practices that were the subject of the plaintiff's claim. A court was ready to determine this. Every settlement reflects the parties' balancing of the strength of their positions against the expenditure of time, money, and effort required to establish them. Threats by a defendant of deliberate delays and obstructions in the suit might present a different case, cf. Dawson, Duress Through Civil Litigation, 45 Mich.L.Rev. 571, 679 (1947). However, it would seriously and needlessly impair the utility of settlement to allow a plaintiff to attack a settlement merely because the financial injury alleged in its initial cause of action may have been serious.

■ We come finally to plaintiff's allegation that it was defrauded by Schine's misrepresentations regarding the financial responsibility of Oswog Corporation. Although we may assume that plaintiff would not have entered into the settlement had it known the lessee was to be financially irresponsible, the record makes it plain that plaintiff would have been entirely content with the settlement if the leases had been performed. We see no reason why plaintiff could not have vindicated whatever rights were violated by this misrepresentation in an action in tort for deceit. The measure of damages for fraudulent misrepresentation includes all pecuniary loss suffered in reliance upon the truth of the representation. American Law Institute, Restatement of Torts, § 549(b). That would extend here to all the damages recoverable against the lessee for breach of the lease. Plaintiff may also have had an action against the Schine defendants on a theory of piercing the corporate veil of Oswog because of Oswog's lack of financial responsibility. See, e. g., Weisser v. Mursam Shoe Corp., 2 Cir., 1942, 127 F.2d 344, 145 A.L.R. 467. We do not say that under no circumstances may a court rescind the settlement of an action that has been obtained by fraud when an adequate remedy to redress the fraud exists at law, cf. L. M. Leathers' Sons v. Goldman, 6 Cir., 1958, 252 F.2d 188. But surely a court is not required to do this at the suit of a plaintiff which itself joined in another misrepresentation upon the court and had an adequate legal remedy against the guilty defendants, especially when such rescission would reinstate the previous action against other parties to the settlement that appear to have been innocent of the fraud.

Judgment affirmed.