JOHN J. TOSCANO AND JOSEPHINE C. TOSCANO, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 50975. Filed May 19, 1969.

*George H. Zeutzius*, for the petitioners.
*Robert B. Hill*, for the respondent.

#### OPINION

DRENNEN, *Judge:* We have before us a motion filed by Josephine C. Zelasko for special leave to file out of time a motion to vacate a prior decision of this Court on the ground that fraud was perpetrated on the Court in obtaining such decision. The motion to vacate was lodged with the Court.

In a statutory notice of deficiency dated July 16, 1953, respondent determined deficiencies in the income taxes of John J. Toscano and Josephine C. Toscano and additions to tax for the years 1946 through 1950. Respondent based the deficiencies upon allegedly unreported income computed by him on the net worth plus nondeductible expenditures method. John J. Toscano and Josephine C. Toscano filed a timely joint petition with this Court seeking a redetermination of the deficiencies for the years 1946 through 1950.

On March 21, 1955, petitioners John J. Toscano and Josephine C. Toscano together with respondent in docket No. 50975 filed a settlement stipulation with this Court in which they stipulated deficiencies and additions to tax under sections 293(b), 294(d)(1)(A), and 294(d)(2) of the 1939 Code for the years 1947, 1949, and 1950, and no deficiencies for the years 1946 and 1948. Decision was entered by this Court pursuant to such stipulation on March 28, 1955.

After the death of John J. Toscano in July 1962, the respondent sought to collect from Josephine the unpaid deficiencies and additions to tax, plus interest. Josephine and her wholly owned corporation, Enterprises Unlimited, Inc., were unsuccessful in an action to enjoin collection from them of Federal income taxes assessed against John J.

and Josephine C. Toscano. *Enterprises Unlimited, Inc.* v. *Davis*, 340 F. 2d 472 (C.A. 9, 1965).

On July 1, 1968, Josephine (under the name of Josephine C. Zelasko) filed a motion under Rule 19(f)[1] of the Tax Court Rules of Practice for special leave to file an attached motion to vacate the Tax Court's 1955 judgment and decision on the ground that such judgment and decision were procured by fraud upon the Court. Respondent filed an objection to petitioners' motion for special leave to file and requested a hearing. Affidavits and some 25 exhibits were also lodged with this Court by Josephine in support of the motion to vacate. On August 21, 1968, a hearing on petitioners' motion for special leave to file was held, after which the Court took the motion under advisement. The parties have filed briefs in support of their respective positions in which were discussed both the motion for leave to file out of time and the more substantive issue involved in petitioners' motion to vacate.

A threshold question is whether this Court has the jurisdiction to vitiate its former decision long after it has become final under the terms of section 7481 of the Code. Ordinarily, the granting or denial of a motion under Rule 19(f) is a discretionary matter, cf. *Commissioner* v. *Meldrum & Fewsmith, Inc.*, 230 F. 2d 283 (C.A. 6, 1956), affirming 20 T.C. 790; but under the circumstances here present the exercise of that discretion may depend on other issues. There appears to be some conflict among the Courts of Appeals on this point. In *Kenner* v. *Commissioner*, 387 F. 2d 689 (1968), the Court of Appeals for the Seventh Circuit held that the Tax Court does have the power to inquire into the integrity of its own decision even when such decision has become final but only in the extreme situation where such decision was produced by "fraud upon the court." But see *Jefferson Loan Co.* v. *Commissioner*, 249 F. 2d 364 (C.A. 8, 1957), which holds that the Tax Court has no equitable jurisdiction to set aside a decision after it has become final even where fraud has been demonstrated. It should be pointed out, however, that no "fraud on the court," as we understand the meaning of the phrase and as explained later in our opinion, was involved in the *Jefferson Loan Co.* case. There, the petitioner-corporation's president and accountant had falsified income in order to conceal losses and financial weaknesses of the corporate taxpayer and the petitioner's income tax liability and personal holding company tax liability determined in the Tax Court decision (under written stipulation) were based on these false income figures.

In the light of this uncertainty it seems prudent to at least examine the substantive question involved in the motion to vacate before we decide whether to grant the motion for special leave to file out of time.

---

[1] Rule 19(f). No motion to vacate or revise a decision may be filed more than 30 days after the decision has been entered, except by special leave.

In doing so we must first understand the limitations of the phrase "fraud on the court." Some guidelines are at hand.

The court in the *Kenner* case carefully defined "fraud on the court" as embracing "only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." The court cites 7 Moore's, Federal Practice, sec. 60.33, p. 512 (2d ed.), for this definition. To this definition, the text in Moore's adds the following qualification: "Fraud *inter partes*, without more, should not be a fraud upon the Court * * *."

An illustration of the type or degree of fraud contemplated by the phrase "fraud on the court" appears in *Hazel-Atlas Glass Co.* v. *Hartford Empire Co.*, 322 U.S. 238 (1944). In that case Hartford had defrauded the Patent Office by helping along its application for a patent through the use of an article written and caused to be published by certain of its attorneys and officials under the name of an ostensibly disinterested expert. Later, in a patent infringement action against Hazel-Atlas, Hartford defrauded the Court of Appeals for the Third Circuit through the use of this spurious article and obtained a favorable judgment. In 1941 Hazel-Atlas commenced an action in the Court of Appeals for the Third Circuit to set aside the judgment entered against it in 1932 on the ground that such judgment had been obtained by fraud. The Supreme Court held that the earlier judgment against Hazel-Atlas had been fraudulently obtained and should be set aside, stating in part as follows:

This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury. Here * * * we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals.[2]

---

[2] Since the Federal Rules of Civil Procedure provide relief from a judgment for "fraud upon the court" the approach taken by Federal courts in the area helps define the phrase. The scheme of the Federal rules is this: Rule 60(b)(3) provides relief from a judgment obtained by "fraud * * *, misrepresentation, or other misconduct of an adverse party." Rule 60(b) then provides that a motion for relief under Rule 60(b)(3) shall be made not more than 1 year after the judgment was entered. But Rule 60(b) also goes on to provide in a saving clause that "This rule does not limit the power of a court * * * to set aside a judgment for fraud upon the court." Hence the rigid time limitation for a motion under Rule 60(b)(3) does not apply where fraud is perpetrated upon the court. Professor Moore points out in sec. 60.33 (p. 509) that "if the motion cannot be granted under [Rule] 60(b)(3) because not timely, then it will be necessary to determine whether the fraud is fraud upon the court, and if 'fraud upon the court' is not kept within proper limits but is ballooned to include all or substantially all species of fraud within 60(b)(3) then the time limitation upon 60(b)(3) motions will be meaningless."

The saving clause in Rule 60(b) dealing with fraud on the court was added by the 1946 revision of Rule 60(b) and the committee note of 1946 cites *Hazel-Atlas Glass Co.* v. *Hartford Empire Co.*, 322 U.S. 238 (1944), as an illustration of the type of fraud contemplated. The Federal courts have made sparing use of the power to set aside a prior judgment because of fraud on the court and seem to insist on strong evidence of some active and deliberate scheme to defraud the court. See *Hawkins* v. *Lindsley*, 327 F. 2d 356 (C.A. 2, 1964); *England* v. *Doyle*, 281 F. 2d 304 (C.A. 9, 1960); and *Martina Theatre Corp.* v. *Schine Chain Theatres, Inc.*, 278 F. 2d 798 (C.A. 2, 1960).

With these standards before us we have carefully considered the petitioner's arguments and her various affidavits and exhibits. The purported fraud upon the Court is that John and Josephine were never husband and wife;[3] that she signed the joint returns filed for the years 1946 through 1950 with John J. Toscano under duress; that none of the income reported in the joint returns was earned by her; and that she has no recollection of signing the Tax Court petition filed with this Court involving those years or knowingly participating in the subsequent Tax Court proceedings.

Even if true, we do not believe that the allegations stated in the motion add up to fraud on the Court so that we would be justified in vacating the 1955 decision. At the very least it must be established clearly and convincingly that the former decision was obtained as a *direct* result of fraud and it should also be shown that the fraudulent conduct was deliberately undertaken to influence the Court in its decision. But the issue before the Court in 1955 was simply the correctness of petitioners' taxable income over a period of 5 years determined by respondent under the net worth method. The decision was entered under a written stipulation of the parties with deficiencies and additions to tax for only 3 out of the 5 years involved. It is not shown that the decision was in any way obtained by deliberately perpetrated fraud on anyone's part.

The marital status of the petitioners was never in issue and hence never before the Court. It is difficult to see how there could be fraud on the Court under these circumstances. Perhaps there was fraud perpetrated on respondent by John when he falsely filed joint returns. Perhaps there was fraud perpetrated by John against Josephine when he falsely claimed her as his wife on the tax returns and thus exposed her to joint and several liability for deficiencies and additions to tax. But none of these fraudulent acts was directly aimed at the Court or in any way impaired the judicial process.

Being of the opinion that this Court would not be justified in vacating the prior decision of this Court even if it has the jurisdiction to do so, and to avoid needlessly discussing the jurisdictional question, petitioners' motion for special leave to file the motion to vacate has been denied.

*An appropriate order will be entered.*

---

[3] Josephine alleges that a purported marriage ceremony between her and John J. Toscano in the city of Fort Smith, Ark., on or about Mar. 24, 1943, never took place. A puzzling aspect of this story is the undisputed fact that John filed a divorce action against Josephine in Las Vegas, Nev., on June 3, 1954, and subsequently obtained such divorce.