WILLIAM L. TAUB, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2352-64.   Filed July 30, 1975.

William L. Taub, pro se.
*Ronald E. Friedman,* for the respondent.

OPINION

TANNENWALD, *Judge:* This matter is before the Court on a motion by petitioner to vacate the decision entered in this case on October 26, 1967, as amended by a decision entered on November 30, 1967, dismissing the case for failure properly to prosecute. Such motion was filed on April 3, 1975, upon the granting of special leave to do so by Chief Judge Howard A. Dawson, Jr.

The case originated with a petition filed by petitioner personally on June 1, 1964, as amended by a further petition filed on August 13, 1964, in response to a notice of deficiency dated April 24, 1964, in which respondent determined that there was a deficiency in petitioner's income tax for the taxable year ended December 31, 1956, of $190,193.77 together with an addition to tax of $95,096.89 under section 6653(b).[1] On October 29, 1964, respondent's motion to designate New York, N.Y., as the place of trial was granted. On December 7, 1964, this Court denied

---

[1] All references herein are to the Internal Revenue Code of 1954, as amended.

petitioner's motion to designate Washington, D.C., as the place of trial on the grounds of alleged hostility by persons in the New York office of respondent, after a hearing at which petitioner was represented by counsel, H. Hugo Perez, Esq. On December 24, 1964, petitioner's counsel filed a motion for rehearing on the denial of petitioner's motion to designate place of trial; that motion was denied after a hearing held on February 10, 1965, at which petitioner's counsel was present. At that same hearing, the Court had before it a motion by respondent under then Rule 18 of the Rules of Practice of this Court for entry of an order that undenied material allegations contained in respondent's answer be admitted. Although the time for filing of a reply to respondent's answer specified in the then Rules of this Court had expired, the. Court, upon the request of petitioner's counsel, granted petitioner leave to file a reply within 30 days and continued the hearing on respondent's motion to March 10, 1965. On March 2, 1965, petitioner's counsel filed a motion for leave to withdraw and petitioner was notified by the Court of that filing and that a hearing thereon was scheduled for March 10, 1965. That motion and respondent's motion under Rule 18 were heard at a motions session held on March 10, 1965, at which petitioner's counsel was present. At the conclusion of that hearing, the Court issued an order granting the motion of petitioner's counsel to withdraw and respondent's motion under Rule 18, no reply having been filed.

On April 29, 1965, new counsel for petitioner entered their appearance and, on May 3, 1965, filed a motion to vacate the Court's order of March 10, 1965, and either order that the material allegations of respondent's answer be deemed denied or, alternatively, grant petitioner leave to file a reply. On May 24, 1965, petitioner's counsel filed a further motion for an order requiring respondent to amend his answer by making it more definite and certain. After a hearing on both motions, held on June 2, 1965, petitioner's motion for an order requiring respondent to amend his answer was denied and the portion of the March 10, 1965, order granting respondent's motion under Rule 18 was vacated with leave granted to petitioner to file a reply to respondent's answer within 45 days. On July 6, 1965, petitioner's counsel filed a motion for leave to withdraw and petitioner was notified of the filing thereof and that a hearing thereon was scheduled for August 11, 1965. On July 16, 1965,

petitioner personally filed a reply to respondent's answer. On July 29, 1965, the motion to withdraw was granted.

The trial of the case was thereafter calendared for a trial session of this Court in New York, N.Y., commencing January 10, 1966 (subsequently postponed to January 17, 1966), of which petitioner was given notice on October 7, 1965, and, with respect to the postponement, on January 5, 1966. On the call of the calendar on January 17, 1966, petitioner appeared through counsel, Jacob Steinberg, Esq., and, at his request, based upon a motion filed on December 16, 1965, the trial of the case was continued. In accordance with a notice served on petitioner's counsel on June 15, 1966, the case was again calendared for a trial session of the Court in New York, N.Y., commencing on September 12, 1966. Upon motion filed by petitioner's counsel, the trial was again continued. In accordance with a notice served on petitioner's counsel on January 31, 1967, the case was again calendared for a trial session of the Court in New York, N.Y., commencing on May 1, 1967. Petitioner's counsel again filed a motion for continuance, which was granted after a hearing held on April 26, 1967.

In accordance with a notice served on petitioner's counsel on July 17, 1967, the case was again calendared for a trial session of the Court in New York, N.Y., commencing on October 16, 1967. Pursuant to an order served on petitioner's counsel on August 3, 1967, the case was placed on the calendar for the motions session of this Court to be held in Washington, D.C., on September 13, 1967, for a progress report as to preparation for trial and for Mr. Steinberg to advise the Court with respect to his intention to represent petitioner. At a hearing on the latter date, Mr. Steinberg appeared and advised the Court that petitioner was encountering difficulties in obtaining evidentiary material, that petitioner was presently in Europe endeavoring to obtain further documentation, and that he intended to remain as petitioner's counsel.

After a hearing on the call of the calendar on October 16, 1967, the Court denied a motion of petitioner's counsel for another continuance filed on October 5, 1967. Said motion stated that petitioner had not yet returned from Europe and had written counsel advising him to ask for a continuance and further that he was continuing to receive medical treatment for a coronary deficiency, that he was still trying to obtain documentation, that

he was financially unable to obtain trial counsel, and that other records were not available because a Maryland court would not make them available. The trial was set for October 18, 1967. A further hearing was held on that date, at which petitioner's counsel stated that he had tried unsuccessfully to reach petitioner by telephoning London after the hearing on October 16 and that he was not ready for trial; he also filed a motion for permission to withdraw as counsel. Respondent, conceding the addition to tax for fraud, then moved to dismiss the case for failure properly to prosecute. The Court denied the motion of petitioner's counsel and granted respondent's motion. A decision was entered on October 26, 1967, as amended by a decision entered on November 30, 1967, that there was a deficiency in petitioner's income tax for the taxable year 1956 in the amount of $190,193.77 and that there was no addition to tax for fraud under section 6653(b). On November 24, 1967, the Court denied a motion filed by Mr. Steinberg to vacate the order of dismissal entered on October 26. No appeal having been taken from the decision of the Court, as amended, it became final on February 29, 1968. See secs. 7483 and 7481.

During a period of over 6 years, from November 30, 1967, to January 17, 1974, no action was taken in this Court with respect to the Court's decision. On the latter date, petitioner through new counsel filed a motion to vacate that decision for reasons set forth in a sworn affidavit by petitioner, in which petitioner alleged that, at the time the case was called for trial on October 16, 1967, he was hospitalized in the Cedars of Lebanon Hospital in Los Angeles, Calif., and that, as a result, he did not know of the proceeding [2] and was unable to contact his attorney. Petitioner's affidavit also set forth a description of certain evidence plus some documentation thereof which he said would establish that the deficiency should "be set aside or at least substantially determined [sic]." He alleged illnesses during the 6-year period and difficulties in obtaining evidence and contended that these elements constituted "excusable neglect" which justified reopening the case. After a hearing held in Washington, D.C., on February 27, 1974, at which petitioner's new counsel was

---

[2] No reference was made in the affidavit to the fact that notice setting the case for trial was dated July 17, 1967, or to the contact petitioner had with his attorney about the case in September 1967.

present, the petitioner's motion to vacate was denied by order dated April 24, 1974.

Approximately a year elapsed before petitioner, on March 27, 1975, personally filed a Motion for Leave to File Out of Time for Reconsideration Out of Time of Motion of Petitioner to Vacate Order of Dismissal dated October 26, 1967, as amended by an order of this Court dated November 30, 1967. As grounds for this motion and the accompanying motion to vacate, petitioner stated that on October 16, 1967, he had been confined to Good Samaritan Hospital in Los Angeles, Calif.,[3] under intensive care for a serious and almost fatal heart attack, which made communication impossible for him. He further stated that respondent made no effort to enforce the deficiency until October 26, 1973, when a motion for summary judgment was made in the United States District Court for the Southern District of New York; that the District Court had adjourned that motion in order to permit petitioner to apply to this Court to vacate its decision; that such application was made and petitioner's motion to vacate was denied on April 24, 1974; that thereafter petitioner applied to the District Court to stay entry of judgment and to vacate the November 30, 1967, decision of this Court on the ground of fraud; and that said application was denied by the District Court on the ground that this Court's decision was res adjudicata and it was incumbent on it to enter judgment for the Government. Petitioner then alleged fraud on this Court in support of his motion for leave to file the accompanying motion to vacate and of that motion itself on the grounds that:

(1) Respondent concealed information from this Court by refusing to submit all information relating to the asserted deficiency that "was available or could have been available for consideration," refused to make "any examination and complete audit," and then falsely stated to this Court that petitioner "never furnished the information to substantiate the deductions set forth in petitioner's tax return for 1956";

(2) Certain attempts were made by employees of the Government to have petitioner pay a bribe and that his refusal to do so resulted in the determination of the deficiency herein by respondent.

---

[3] Contrast this with petitioner's sworn affidavit, submitted with his motion to vacate filed on Jan. 17, 1974, wherein he stated that on Oct. 16, 1967, he was in Cedars of Lebanon Hospital in Los Angeles.

In support of these allegations, petitioner submitted portions of a transcript of a conversation between petitioner and a person alleged to have been an attorney for the Department of Justice and made certain statements, together with purported copies of documents in support of the same, which he claimed proved that he did not owe the tax assessed against him. As previously indicated (see p. 741 *supra*), on April 3, 1975, petitioner's motion for leave to file out of time was granted and his motion to vacate was calendared for hearing in New York, N.Y., on June 9, 1975. On May 5, 1975, petitioner filed a motion to change the place of hearing on his motion to vacate from New York, N.Y., to Washington, D.C. On May 9, 1975, the Court issued an order setting a hearing on petitioner's motion to change the place of hearing for June 9, 1975, in New York, N.Y., and directed that hearing and action on the motion to vacate be held in abeyance. On June 9, 1975, a hearing was held in New York, N.Y., at which petitioner was represented by Leo Gitlin, Esq., who stated to the Court that petitioner was "sick in bed." At the conclusion of that hearing, the Court deferred action on the motion to change the place of hearing and issued an order, dated June 13, 1975, directing that a hearing be held in Washington, D.C., on July 9, 1975, with respect to the following matters:

(1) the precise whereabouts of petitioner during the period July 17, 1967, the date of issuance and service of the notice of trial in the above-docketed case, through October 26, 1967, the date of entry and service of Order of Dismissal for lack of prosecution, and particularly during the five-day period commencing October 16, 1967, and

(2) the time when and the circumstances under which petitioner acquired Exhibit A attached to his Motion to Vacate, Etc., which purports to be a record of a conversation between petitioner and an attorney of the United States Department of Justice.

At the hearing on July 9, 1975, petitioner and Mr. Steinberg appeared and testified. At the outset, petitioner volunteered that he had not been hospitalized in Los Angeles in October of 1967 and that his previous statements to that effect were incorrect. He testified that he was in a hospital in London at that time and submitted certain documentation in support of that testimony.[4] He also testified that he went from Claridge's Hotel in London to his doctor and then to the hospital on October 13, 1967, although

---

[4] The documentation consisted of two sworn statements by one James Kelly. There is nothing in the record to identify Kelly but, for reasons later articulated herein, we do not consider this absence of identification significant.

the bill from Claridge's shows October 11, 1967, as the last day of petitioner's occupancy there.

At the July 9 hearing, petitioner also submitted the full transcript of the conversation a portion of which was annexed to his moving papers, and testified that the conversation took place in 1953, that he had ordered the conversation to be recorded and paid for the same, and that the recording took place without the knowledge of the person alleged to have been an attorney with the Department of Justice.[5] Petitioner explained his failure to bring the alleged bribery attempt to the attention of the Court prior to the filing of his motion papers in 1975 by the assertion that he had only recently been able to find the record of the conversation.

Against the foregoing background, we proceed to an analysis of the various matters which require disposition. At the outset, we note that much of petitioner's testimony and documentary evidence can at best be characterized as "elusive." For one who is charging fraud on the Court by respondent, it appears to us that, from the inception of this case, petitioner has been less than forthcoming with the Court. We find it difficult to understand his contradictory statements as to his whereabouts in October 1967 and his apparent failure fully to inform his attorney as to his situation at that time when they met in London a month later. We also do not understand his failure to inform the Court of his suspicions relating to the alleged bribery attempt; granted that he may not have been able to find the record of the conversation, he was both the procurer of and a participant in the conversation so that he had personal knowledge of the occurrence for over 20 years.[6] However, the foregoing elements have only peripheral significance herein.

We also recognize that the July 9, 1975, hearing was confined to the matters specified in the Court's order of June 13, 1975. However, petitioner's motion to vacate is still pending before this Court and, as we see it, there is no obstacle to our disposing of that motion, without further proceedings herein, if we can do so on the basis of assuming that the allegations contained in the petitioner's moving papers, taken in conjunction with the entire

---

[5] The record indicates considerable doubt whether the person was in fact an employee of the Government.

[6] Our lack of understanding is accentuated by the fact that, as the record herein shows, petitioner made allegations of alleged bias against him at an earlier date in the proceedings and long before our 1967 decision.

record of proceedings in this case, are true.[7] Accordingly, we proceed to deal with those allegations.

Petitioner argues that the long delay in producing some of the information contained in his moving papers is explainable and that, in any event, by virtue of *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238 (1944), neither laches, not perhaps even the fact that the moving party may not have "clean hands," is a bar to a motion to vacate based on fraud upon the Court. We accept the general proposition that integrity of the judicial process may override considerations such as laches and possibly the absence of clean hands where fraud on the Court is involved. See 322 U.S. at 245 (laches). See also *Toscano v. Commissioner,* 441 F. 2d 930, 936-937 (9th Cir. 1971), vacating 52 T.C. 295 (1969) (laches); *Martina Theatre Corp. v. Schine Chain Theatres, Inc.,* 278 F. 2d 798, 801 (2d Cir. 1960) (clean hands). See also 11 Wright & Miller, Federal Practice and Procedure, Civil, sec. 2870 (1973). But we are constrained to note that, in *Hazel-Atlas Glass* and *Toscano,* the laches involved delay in discovering evidence which was otherwise unknown to the moving party, whereas in this case all of the facts upon which petitioner relies were fully known to him long before this case commenced in 1964. Here again, however, we need not dispose of petitioner's motion on either of the aforementioned grounds.

The first ground upon which petitioner relies is his refusal to accede to purported attempts to extract a bribe from him. Initially, we note that any such attempt by the purported attorney of the Department of Justice could not possibly have related to this proceeding, since it took place more than 3 years prior to the close of the taxable year involved herein and long before petitioner filed any return, much less could have been audited. But even assuming, as petitioner alleges, that there is some connection between the bribe attempts [8] and the determination of the deficiency herein, we do not think it constitutes fraud on the Court. What was involved *at most* was chicanery on the

---

[7] The order of the Chief Judge, dated Apr. 3, 1975, merely directed that a hearing be held on petitioner's motion to vacate. That order does not require that witnesses be heard. Under these circumstances, petitioner's insistence on the right to present the testimony of third-party witnesses is without merit, leaving aside the unquestioned right of this Court to exercise its discretion by directing a modification of such order.

[8] The record does not specifically indicate when the alleged second bribery attempt, involving an internal revenue agent, took place, but it evidently took place prior to July 22, 1960, when the agent issued his report.

part of some officials of the Government long prior to the commencement of this case. In other cases, allegations of unlawful or unethical conduct, outside of the court proceeding itself by the persons directly involved therein, have been rejected as grounds for reopening a decision which has otherwise become final. Cf. *Stickler v. Commissioner,* 464 F. 2d 368 (3d Cir. 1972); *Greater Boston Television Corp. v. F.C.C.,* 463 F. 2d 268 (D.C. Cir. 1971); *Kenner v. Commissioner,* 387 F. 2d 689, 691-692 (7th Cir. 1968), cert. denied 393 U.S. 841 (1968), rehearing denied 393 U.S. 971 (1968). It appears to us that any impact of the alleged bribery attempts on the 1956 taxable year could have at most been the basis for proof, based on the allegation by petitioner in his reply filed on July 16, 1965, that the respondent's determination was selectively discriminatory against him and therefore arbitrary and capricious. See *Greenberg's Express, Inc.,* 62 T.C. 324, 328-329 (1974). Petitioner's first contention is without merit.

Petitioner's second contention is that respondent withheld from the Court evidence which "was available or could have been made available" for the Court's consideration of the deficiency asserted against him. As we view it, the evidence to which petitioner refers was at best factual material the effect of which would have been the subject of dispute between the parties if it had been submitted at a trial. Particularly when one remembers that petitioner must have been aware of this evidence long before October 1967, albeit that it may have been difficult for him to obtain it,[9] the absence of fraud on the Court is obvious. *Kupferman v. Consolidated Research & Mfg. Corp.,* 459 F. 2d 1072 (2d Cir. 1972). But even if we assume that the foregoing analysis is insufficient and that respondent did fail to disclose pertinent evidence, petitioner could not prevail. See *Keys v. Dunbar,* 405 F. 2d 955 (9th Cir. 1969); *United States v. One 1940 Oldsmobile Sedan Automobile,* 167 F. 2d 404 (7th Cir. 1948). Such failure to disclose did not prevent petitioner "from fully and fairly presenting his case"—an opportunity which he had for more than 3 years prior to the entry of our 1967 decision.

---

[9] Petitioner was not without power to subpoena any such evidence in the hands of respondent. See sec. 7456; Rule 44 of the former Rules of Practice of this Court. We also note that the record of the hearing, held by this Court on Sept. 13, 1967, indicates that petitioner's then counsel, Mr. Steinberg, had some evidence which he asserted had been furnished to respondent, but at no time prior to the entry of our 1967 decision was any evidence submitted to this Court.

See *Atchison, Topeka & Santa Fe Railway Co. v. Barrett,* 246 F. 2d 846, 849 (9th Cir. 1957). Similar analysis disposes of petitioner's further allegations that respondent refused to make "any examination and complete audit" and falsely stated to this Court that petitioner "never furnished the information to substantiate the deductions set forth in petitioner's tax return for 1956." [10] The long and the short of it is that petitioner is simply seeking to equate a possible arbitrary and capricious determination by respondent with fraud on the Court. Cf. *Human Engineering Institute,* 61 T.C. 61, 66 (1973). This he may not do. Petitioner's second contention is likewise rejected.

Finally, we note that neither the delay on respondent's part in seeking a judgment in the United States District Court nor petitioner's misconception that that court would grant him relief furnishes any basis upon which we can reopen our 1967 decision which long ago became final.

We recognize that petitioner is in the difficult position of having to respond to a judgment for a large amount resulting from our 1967 decision entered as a result of petitioner's default. But petitioner had ample opportunity to defend himself in this case over a substantial period of time—more than 3 years elapsed from the time this case was commenced until petitioner's medical problems in October 1967—albeit that opportunity may have been restricted because of claimed difficulties in obtaining evidence. His failure to take advantage of that opportunity is to a substantial degree of his own making.[11]

As a general rule, a decision of this Court, in the absence of an appeal, becomes final 90 days after it is entered. See secs. 7481 and 7483. The decisions holding that these statutory provisions are absolute (see, e.g., *Lasky v. Commissioner,* 235 F. 2d 97 (9th Cir. 1956), affd. per curiam 352 U.S. 1027 (1957)), have been

---

[10] Our examination of the record of the various proceedings in this case indicates that at no time did respondent affirmatively represent to this Court that petitioner had "never furnished the information to substantiate the deductions set forth in petitioner's tax return for 1956." The most that the record reveals is that respondent may have received some evidence that some payments were made and the ostensible purpose of such payments and that, in his judgment, such evidence was insufficient to constitute "substantiation." This simply shows that there were issues of fact that caused respondent to determine the deficiency herein and as to which petitioner could seek a judicial determination.

[11] Although we have previously indicated that laches is usually not a barrier where there is, in fact, "fraud on the court," we are constrained to note that petitioner's passport shows that he was admitted to the United States on Dec. 8, 1967, and did not again leave until June 1968. Thus, he had a considerable period of time between that date and Feb. 29, 1968, within which to take further action in respect of our 1967 decision either again to move to vacate and/or to file a notice of appeal therefrom.

modified to provide that we have jurisdiction to set aside a decision which would otherwise be final where there is "fraud on the court." *Toscano v. Commissioner, supra; Kenner v. Commissioner, supra.* Moreover, since the earlier decisions as well as those in *Kenner* and *Toscano* were rendered, this Court has been accorded status under article I of the United States Constitution.

We find nothing in our new status, however, which expands the narrow exception to the general rule of finality of our decisions carved out by *Toscano* and *Kenner.* In those two cases, the Courts of Appeals at most indicated that the same exception which applies to the finality of United States District Court decisions (see rule 60(b) of the Federal Rules of Civil Procedure) governs our decisions, namely, that "fraud on the court" must be "only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." See *Kenner v. Commissioner,* 387 F.2d at 689; *Toscano v. Commissioner,* 441 F.2d at 933, quoting 7 Moore, Federal Practice, sec. 60.33 (2d ed.). This same narrowly defined exception has been reiterated by at least one Circuit Court of Appeals in respect of decisions of this Court entered subsequent to the acquisition of article I status. *Senate Realty Corp. v. Commissioner,* 511 F.2d 929 (2d Cir. 1975).[12]

Taking the most favorable view of the allegations contained in petitioner's moving papers, in the context of the record herein, we find nothing to justify the application of the "fraud on the court" exception to the strong policy of finality of our decisions. See cases collected in 11 Wright & Miller, *supra,* and 7 Moore, *supra.* Accordingly petitioner's motion to vacate our prior decision of October 26, 1967, as amended on November 30, 1967, is denied.

*An appropriate order will be entered.*

---

[12] See also *Bernard Deutsch,* T.C. Memo. 1975-76. Compare *Pasternack v. Commissioner,* 478 F.2d 588 (D.C. Cir. 1973), where the Court of Appeals was able to avoid the issue of "fraud on the court" by finding that a timely notice of appeal had been filed.