BEN AND MARGARET ABATTI, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 11112-80, 11300-80, 11503-80, 11505-80, 11511-80, 1697-81, 4249-81, 4250-81, 21412-81, 21413-81, 21463-81, 29508-81, 30280-81, 30545-81.          Filed June 25, 1986.

---

[1] The following cases are considered herewith: Tony Abatti and Ninfa Abatti, docket No. 11300-80; John A. Ryerson and Virginia E. Ryerson, docket No. 11503-80; Stanley E. Ryerson and Faye E. Ryerson, docket No. 11505-80; Michael J. Dubisky and Marlene L. Dubisky, docket No. 11511-80; Robert F. Linington, docket No. 1697-81; Stuart J. Shoob and Barbara T. Shoob (a.k.a. Barbara T. Kraver), docket No. 4249-81; Richard L. and Janet C. Norton, docket No. 4250-81; Louis C. Alaia and Estate of Margy L. Alaia, et al., docket No. 21412-81; Vaughn Krikorian and Rosalie C. Krikorian, docket No. 21413-81; Roy M. Montgomery and Lorene E. Montgomery, docket No. 21463-81; Watson L. Haight and Joyce C. Haight, docket No. 29508-81; J. Brennan Cassidy, docket No. 30280-81; and Stanley R. Gold and Helen J. Gold, docket No. 30545-81.

*William K. Hogan*, for the petitioners in all dockets.

*George Mac Vogelei*, for the petitioners in all dockets except 30545-81.

*Claire Priestley-Cady*, for the respondent.

## OPINION

SIMPSON, *Judge*: This matter is before the Court on the petitioners' motion for leave to file motion to vacate decisions, pursuant to Rule 162, Tax Court Rules of Practice and Procedure.[2] The petitioners are limited partners in five California limited partnerships formed on October 28, 1976, with the stated purpose of leasing property and mining for coal. On the same day, such partnerships formed a joint venture known as Boone Powellton Coal Partners, Ltd. (the joint venture). Acting on behalf of its constituent partnerships, the joint venture entered into a contract with the Boone Powellton Coal Co. (the corporation) to execute mineral subleases to certain West Virginia property with respect to which the corporation had acquired the right to mine coal. The partnerships executed such mineral subleases with the corporation on December 31, 1976. Each sublease provided that the limited partnership would pay an advanced minimum royalty to the corporation—one-third in cash and the balance by a nonrecourse note. Each of the taxpayers joined his partnership after November 20, 1976, but before December 31, 1976.

---

[2]Any reference to a Rule is to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Each of the partnerships chose the accrual method of accounting and the calendar year as its tax year. Each reported advanced royalty losses for 1976. The taxpayers claimed deductions for their distributive shares of the partnership advanced royalty losses for such year. The Commissioner denied such deductions, and the taxpayers petitioned this Court for review of their deficiencies.

Thereafter, 113 taxpayers signed agreements to be bound by the Court's opinion in a lead case (the agreement). Such agreement stated in part:

5. The parties intend that the trial of the five consolidated cases be determinative of all the issues relating to the five partnerships, with respect to all of the petitioners subject to this agreement.

6. * * *

   b. That all of the subject cases will be bound by this Court's opinion in the five consolidated cases listed above, and decisions may be entered in accordance therewith.

   c. That all of the subject cases except the five consolidated cases listed above will be continued generally until such time as an opinion is issued with respect to the consolidated cases.

On July 15, 1983, the Commissioner filed a motion for partial summary judgment under Rule 121. In support of his motion, the Commissioner argued: (1) That because the taxpayers were not members of their partnerships as of October 29, 1976, the new rule of section 1.612-3(b)(3), Income Tax Regs., as amended, applied to disallow deduction of advanced royalties since no coal was sold during 1976, and (2) that no loss accrued by the partnerships prior to the taxpayers' entry into their partnerships can be allocated to the taxpayers, even if the obligation previously accrued was paid after the admission of the taxpayers as new partners.

During the pendency of such motion, the Court decided *Elkins v. Commissioner*, 81 T.C. 669 (1983), holding that the new rule of section 1.612-3(b)(3), Income Tax Regs., is not applicable if the partnership was obligated on October 29, 1976, to pay the advanced royalties; the partner need not be so obligated. Thereafter, the Court required the parties to file simultaneous supplemental memorandums regarding the effect of such opinion on the Commissioner's first argument. The Commissioner, in his supplemental memorandum, ar-

gued that the agreements to sublease were illusory and not binding on the partnerships prior to October 29, 1976.

In *Gauntt v. Commissioner*, 82 T.C. 96 (1984), revd. and remanded sub nom. *Heinz v. Commissioner*, 770 F.2d 874 (9th Cir. 1985), revd. and remanded in an unpublished order sub nom. *Alexander v. Commissioner* (9th Cir. 1986), we granted the Commissioner's motion on the ground that the partnerships' obligations under the agreement to sublease were illusory. Consequently, the Commissioner filed motions for entry of decisions in accordance with the agreement. In some cases, there was a dispute over the amount of the deficiency, but in no case did the taxpayer object to entry of decision on the ground that the decision in *Gauntt* was not yet final. After resolving the disputes that did exist over the amounts of the deficiencies, the Court entered decisions in all the cases. In the cases now before the Court, the petitioners made no objection to the entry of a decision.

At least 51 cases which were subject to the agreement were properly appealed. On September 9, 1985, in *Heinz*, the Court of Appeals reversed and remanded *Gauntt*. The opinion contained a one sentence legal conclusion: "Taxpayers were not given a 'full and fair opportunity to ventilate the issues involved in the motion.' *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982)." 770 F.2d at 876. The appellate court believed that the taxpayers had not been given fair notice that the Commissioner would challenge the binding nature of the agreement made by the partnerships on October 28, 1976.

The petitioners in the case at hand did not appeal the decisions entered against them as a result of *Gauntt*. On February 18, 1986, they attempted to file a motion to vacate decisions, pursuant to Rule 162. Because any such motion filed more than 30 days after entry of decision requires leave of Court, it was filed as a motion for leave to file motion to vacate decisions.

The internal revenue laws establish procedures for judicial review of deficiencies claimed by the Commissioner before payment is required. Under such procedures, the Commissioner must notify a taxpayer of a deficiency determined by him, and the taxpayer has a limited opportunity to seek judicial review of that deficiency in the Tax Court. If the

dispute is submitted to the Tax Court for adjudication, the parties have an opportunity to seek appellate review of any decision by the Tax Court. While the judicial review is taking place, the Commissioner must suspend his activities with respect to assessment and collection of the tax, but when those proceedings are completed, he may then proceed to assess and collect any tax found to be due. Section 7481 declares when a decision becomes final so that the Commissioner knows that he is free to go ahead with the collection of the tax. Under that section, a decision of the Tax Court becomes final in 90 days if it is not appealed. Once a decision is final, it cannot generally be attacked. *Lasky v. Commissioner*, 352 U.S. 1027 (1957), affg. 235 F.2d 97 (9th Cir. 1956), dismissing petition for review of 22 T.C. 13 (1954); see *R. Simpson & Co. v. Commissioner*, 321 U.S. 225 (1944); *Helvering v. Northern Coal Co.*, 293 U.S. 191 (1934).[3] Yet, this Court has "in keeping with the inherent power of all courts, the power to vacate a void decision" (*Brannon's of Shawnee, Inc. v. Commissioner*, 71 T.C. 108, 112 (1978)), and we have jurisdiction to set aside a decision which would otherwise be final where there is "fraud on the court" (*Toscano v. Commissioner*, 441 F.2d 930 (9th Cir. 1971), vacating 52 T.C. 295 (1969); *Kenner v. Commissioner*, 387 F.2d 689 (7th Cir. 1968), affg. an unreported order of dismissal of this Court), or where it is based on mutual mistake (*Reo Motors v. Commissioner*, 219 F.2d 610 (6th Cir. 1955)).

The petitioners claim that it was the intention of the parties to the agreement that every participating taxpayer would be bound by the final decision in the lead case. Because some decisions were properly appealed and reversed and remanded, those decisions are not final. Therefore, the petitioners maintain that the decisions in their cases should not be considered final and should be vacated to carry out their understanding of the agreement. In effect, they argue that the agreement provides them with all the benefits of an appeal without incurring the expense and

---

[3] We observe that the cited cases were decided prior to this Court's attaining status under Article I of the U.S. Constitution and the appearance of the Federal Rules of Appellate Procedure. H. Dubroff, The United States Tax Court: An Historical Analysis 367-371 (1979). On the facts of this case, it is not necessary to determine the effect of such occurrences, if any, on the jurisdictional limitations of this Court.

without complying with the statutory procedural requirements.

The agreement states that "the subject cases will be bound by this Court's opinion" in the lead case and that all subject cases except the lead case "will be continued generally until such time as an opinion is issued" in the lead case. Additionally, it states that the "trial" of the lead case will determine all issues relating to the five partnerships in the subject cases. The agreement contains no reference to an appeal or to a final decision of the Tax Court in the lead case, and the only court referred to is the Tax Court. Thus, nothing in the agreement supports the petitioners' position. After carefully reviewing the entire agreement, the only reasonable interpretation is that it did not affect the rights and duties of the petitioners to appeal their cases individually.

Such interpretation is supported by the fact that timely notices of appeal were filed in 51 cases subject to the agreement. Clearly, the taxpayers in those 51 cases believed the decisions in their cases had to be appealed to gain the benefits of appellate review. The petitioners' conduct also supports our interpretation. The petitioners did not object when motions for entry of decision were filed in their cases or within the 90 days following such entries. Their silence was in keeping with the agreement—the petitioners knew that the opinion referred to in the agreement had been issued.

Finally, the petitioners and the Commissioner could have entered into an agreement providing that decisions in the subject cases would be entered into in accordance with a final decision in the lead case. Under such an agreement, no decisions would yet have been entered in the subject cases, but these petitioners agreed to follow the opinion of this Court in the lead case, not a final decision in that case. The petitioners appear to suggest that we should construe their agreement as one to extend the appeal period, but such an agreement would be unenforceable. See *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934); *Feistman v. Commissioner*, 587 F.2d 941 (9th Cir. 1978), dismissing appeal from 63 T.C. 129 (1974); Fed. R. App. P. 26(b).

These observations lead us to conclude that the petitioners made a conscious decision not to appeal the decisions in their cases and that, as a result, the decisions in their cases became final prior to their filing the motion at hand.

The petitioners also argue that a failure to enforce the interpretation of the agreement they promote results in a fraud on the court and, therefore, we have the power and the duty to vacate the decisions entered in their cases. Fraud on the court is "only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjud[g]ing cases that are presented for adjudication. Fraud, *inter partes*, without more, should not be a fraud upon the court." *Toscano v. Commissioner*, 441 F.2d at 933, quoting 7 J. Moore, Federal Practice, par. 60.33 (2d ed. 1970). To prove such fraud, the petitioners must show that an intentional plan of deception designed to improperly influence the Court in its decision has had such an effect on the Court. *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 245-246 (1944); *Toscano v. Commissioner*, 441 F.2d at 935; *Keys v. Dunbar*, 405 F.2d 955, 957-958 (9th Cir. 1969), citing *Atchison, Topeka & Santa Fe Railway Co. v. Barrett*, 246 F.2d 846, 849 (9th Cir. 1957); *Kraasch v. Commissioner*, 70 T.C. 623, 626 (1978); see *Kenner v. Commissioner*, 387 F.2d at 691-692. When the Court entered the decisions in the petitioners' cases, it did so in accordance with the clearly expressed intention of the parties to the agreement, and although the petitioners now urge a different interpretation of the agreement, we have rejected their requested interpretation. We are still of the opinion that the decisions were entered in accordance with the agreement, and there has been absolutely no evidence of any fraud on the Court.

In the alternative, the petitioners argue that the decisions in their cases are void because the opinion in *Heinz* indicates that they were denied due process and, therefore, the Court has the power to vacate such decisions. The decision and opinion in *Heinz* were limited to those taxpayers who exercised their right to appeal decisions entered as a result of the agreement. The petitioners did not exercise

their rights and failed to notify the Court of their due process claims until almost 2 years after our opinion in *Gauntt*. Additionally, there is no evidence that the Court of Appeals considered such a constitutional question. The phrase "due process" does not appear in its opinion and is absent from the opinion in *Cool Fuel*, the case from which most of the court's legal conclusion was quoted. It is clear that the petitioners have only themselves to blame for their misfortune. Their decision not to file appeals was a decision to accept this Court's opinion in *Gauntt*.

The petitioners rely on *Sennett v. Commissioner*, 69 T.C. 694 (1978), as support for their motion. In *Sennett*, a case subject to an agreement to be bound by the final decision of this Court, the Commissioner alleged that a fraud had been committed on the Court in the lead case. He argued that the subject cases should not follow the decision in the lead case. We held that the Commissioner could not collaterally attack the decision in the lead case and, therefore, the agreement to be bound would be enforced. Additionally, the Court indicated that undue delay might be fatal to a direct attack on the lead case. Contrary to the petitioners' belief, such case does not stand for the proposition that if the decision in a lead case is reversed, the decisions in subject cases which have not been appealed are also reversed.

*An order will be issued denying the petitioners' motion.*