T.C. Summary Opinion 2004-142

UNITED STATES TAX COURT

SHARON J. FIX, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12958-99S.                   Filed October 14, 2004.

Sharon J. Fix, pro se.

J. Robert Cuatto, for respondent.

WOLFE, Special Trial Judge:  This matter is before the Court on petitioner's Motion for Leave to File Motion to Vacate Out of Time (embodying Motion to Vacate) (Motion), filed on January 21, 2004.  It was heard pursuant to the provisions of section 7463 of the Internal Revenue Code.  All section references are to the Internal Revenue Code in effect at relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The order to be entered is not reviewable by any other court and this opinion should not be cited as authority.

Petitioner seeks to vacate a stipulated decision of this Court entered on February 29, 2000. Petitioner contends that the stipulated decision was entered as a result of fraud on the Court.

## Background

By notice of deficiency, respondent determined that petitioner was liable for an income tax deficiency for 1996 and an addition to tax for filing her return after its due date. Petitioner filed a small tax case petition with this Court on July 26, 1999, and her case was calendared for the Court's trial session in Phoenix, Arizona, commencing on February 14, 2000.

Petitioner's case was assigned to Erin Huss (Ms. Huss), an attorney employed at respondent's Phoenix office. Petitioner was present in the courtroom prior to the scheduled calendar call in Phoenix on February 14, 2000. Petitioner was not represented by counsel. Henry Eide (Mr. Eide), her former accountant, who prepared her 1996 return was present in the courtroom to provide "moral support" for petitioner and to satisfy his curiosity about Tax Court proceedings. Kent Ellsworth (Mr. Ellsworth), petitioner's accountant at the time of trial, represented petitioner during pretrial settlement negotiations. Mr. Ellsworth is not an attorney or otherwise authorized to represent

clients before this Court, and he was not present in the courthouse on the date of the Phoenix calendar call.

Prior to the Phoenix calendar call, petitioner discussed her case with Ms. Huss, and they completed a previously negotiated agreement to settle. The parties entered into a stipulated decision document, signed on February 14, 2000, by petitioner and J. Robert Cuatto, a supervising attorney with respondent's Phoenix office.

In relevant part, the stipulated decision document signed by the parties states:

> Pursuant to agreement of the parties in this case, it is
>
> ORDERED AND DECIDED: That there is a deficiency in income tax due from the petitioner for the taxable year 1996 in the amount of $7,121.00; and
>
> That there is no addition to tax due from the petitioner for the taxable year 1996, under the provisions of I.R.C. § 6651(a)(1).
>
> *   *   *   *   *   *   *
>
> It is hereby stipulated that the Court may enter the foregoing decision in this case.

The decision was entered by the Court on February 29, 2000, and it became final 90 days later on May 29, 2000.

On December 30, 2003, nearly 3-1/2 years after the decision in her case became final, petitioner wrote a letter to the Court and asked that the decision be set aside. In the letter petitioner alleged that she was coerced and intimidated by Ms.

Huss into signing the stipulated decision document.  Petitioner

wrote, in part:

> Before I even entered the hearing, Ms. Erin Hess
> [sic] confronted my accountant, who had accompanied me
> to explain what happened to the documents.  She
> aggressively dressed him down verbally and the
> character of her accusations so intimidated him that he
> turned on his heel and left the building, abandoning
> me.  I was then coerced into signing the decision
> document by Ms. Hess, who demanded that I either sign
> the document immediately or she would have me jailed on
> the spot.

> I never went before the Judge to argue my case and
> defend myself as a result of the actions of Ms. Hess.
> And it was not a matter of choice.  I even tried to
> leave the court building when faced with this illegal
> and unconscionable onslaught, but Ms. Hess had me
> brought back to her by two court security guards
> against my wishes.  There is no way I would have signed
> that decision document any other way because I KNEW I
> did not owe the money.  And in spite of all the denials
> of irresponsible behavior by IRS counsel and their
> associates, I continue to be on the target of threats
> and intimidation from the district counsel's office
> over this matter.

Petitioner's letter was filed by the Court as petitioner's

Motion on January 21, 2004.

## Discussion

Under section 7481(b), a decision of the Court in a small

tax case becomes final 90 days after the decision is entered.

Rule 162 provides that a motion to vacate or revise a decision

shall be filed within 30 days after the decision has been entered

unless the Court shall otherwise permit.

As previously noted, the decision in this case was entered

on February 29, 2000.  Petitioner did not file a motion to vacate

or revise the decision within 30 days of that date, and under section 7481(b), the decision became final on May 29, 2000.

As a general rule, the Court lacks jurisdiction to vacate a decision once it becomes final. Abatti v. Commissioner, 859 F.2d 115, 117-118 (9th Cir. 1988), affg. 86 T.C. 1319 (1986); Cinema '84 v. Commissioner, 122 T.C. 264, 270 (2004). An exception to this general rule applies where a decision was obtained by fraud on the Court. Drobny v. Commissioner, 113 F.3d 670, 677 (7th Cir. 1997), affg. T.C. Memo. 1995-209; Abatti v. Commissioner, supra at 118.

The Court of Appeals for the Ninth Circuit, whose opinions are controlling in this case, defines fraud on the Court as "'an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'" Abatti v. Commissioner, supra at 118 (quoting Toscano v. Commissioner, 441 F.2d 930, 934 (9th Cir. 1971), vacating 52 T.C. 295 (1969)). The concept of fraud on the Court is a narrow one and should be applied in the interest of preserving the finality of judgments. Toscano v. Commissioner, supra.

To prove fraud on the Court, petitioner has the burden of establishing by clear and convincing evidence that "an intentional plan of deception designed to improperly influence the Court in its decision has had such an effect on the Court." Abatti v. Commissioner, 86 T.C. at 1325. See Drobny v.

Commissioner, supra at 677-678; Pulitzer v. Commissioner, T.C. Memo. 1987-408.  The burden of proof cannot be met by broad assertions, and the moving party must come forward with "'specific facts which will pretty plainly impugn the official record.'"  Drobny v. Commissioner, supra at 677 (quoting Kenner v. Commissioner, 387 F.2d 689, 691 (7th Cir. 1968)).

In the present case, petitioner failed to introduce any credible evidence in support of her allegations that she was coerced by threats and intimidation into entering into a stipulated decision.  Not only did petitioner fail to establish that any improper conduct occurred, but her account of the circumstances leading to and surrounding the signing of the stipulated decision document was contradicted by several credible witnesses, including her own former accountants, Mr. Eide and Mr. Ellsworth.

Petitioner argues that Mr. Eide left the courtroom on the date set for trial after a verbal altercation with Ms. Huss, but Mr. Eide explicitly disagreed with petitioner's statement and testified that he did not have any contact with Ms. Huss on that day.  Mr. Eide also stated that he did not witness any discussions petitioner had with Ms. Huss on the date of the calendar call.

Mr. Ellsworth testified that petitioner had agreed to the terms of a pretrial settlement that served as the basis for the

stipulated decision.  He explained that the settlement was a very favorable one for petitioner, denied that petitioner was coerced into the settlement, and testified that with respect to the negotiation:  "I was happy because * * * it seemed like we had saved several thousand dollars."  He said:  "I thought we'd done a really good job."  While Mr. Ellsworth stated that petitioner was in agreement with the favorable settlement he had negotiated for her, he noted that she did not seem to understand fully the taxation of her capital gains.[1]

Ms. Huss testified that her dealings with petitioner were "professional" and strongly denied petitioner's accusations that she coerced and intimidated her into signing the stipulated decision document.  In response to petitioner's accusatory questions, Ms. Huss specifically denied ever threatening to have petitioner thrown into jail or brought back into the courtroom by security personnel against her will.  Further, Ms. Huss made it clear that she never has threatened a taxpayer with a jail

---

[1]  Mr. Ellsworth explained:

> She had a hard time understanding the capital gain law.  She couldn't understand how you can be taxed on something when you don't get the cash.  And I tried to explain it over and over again that the cash is irrelevant in calculating capital gains, it's actually a situation of basis versus sales price.  And we couldn't establish basis over the numbers that we talked about and that's why we settled for what we did.

sentence and never has asked security guards to restrain a taxpayer. Ms. Huss's testimony was clear, explicit, and entirely credible.

With respect to petitioner's statements that security personnel had refused to allow her to leave the courthouse and had acted on Ms. Huss's orders, Steve Borak, senior deputy for the U.S. Marshals Service, testified that the Court's security officers do not take orders from respondent's counsel and that it would "defy intuition" for security personnel to involve themselves in the judicial process. Further, Mr. Borak testified that no incident reports were filed at any point during the Court's February 2000 Phoenix trial session. Since security personnel must file an incident report any time they are involved with verbal confrontations or the use of force, an incident report would have been filed if security officers had brought someone back into the courtroom against his or her wishes.

Petitioner has failed to show that the stipulated decision entered in this case was the result of fraud on the Court. Petitioner has not shown that Attorney Erin Huss or any security personnel engaged in any improper actions in the handling of petitioner's case. The record establishes that petitioner's accusations of fraud on the Court are without merit.

For reasons set forth above, petitioner's Motion is denied.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>An appropriate order denying petitioner's motion for leave to file motion to vacate will be issued</u>.