**Herbert W. TIMMS, dba Petrol Express; Gas-A-Tron of Arizona; Gas-A-Tron Corporation; Petrol Express Cooperative; Petrol Stops, Ltd.—Rio Linda and Petrol Stops Northwest, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 80–5726.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1982.

Decided June 4, 1982.

As Amended on Denial of Rehearing July 7, 1982.

Kristina E. Harrigan, Washington, D. C., argued, for defendant-appellant; Anne B. Durney, Washington, D. C., on brief.

Fred Luyties, Tucson, Ariz., argued, for plaintiffs-appellees; Duff C. Hearon, Molloy, Jones, Donahue, Trachta, Childers & Mallona, P. C., Tucson, Ariz., on brief.

Before NELSON and REINHARDT, Circuit Judges, and EAST,* District Judge.

REINHARDT, Circuit Judge.

Plaintiff taxpayers entered into a settlement agreement with the Government with respect to contested employment taxes. A provision of the settlement agreement, which the taxpayers argue entitles them to a refund of all taxes paid pursuant to the agreement, is disputed. On cross motions for summary judgment, the district court adopted the taxpayers' interpretation of the agreement and ordered a refund. The Government appealed. We reverse.

The facts are undisputed. Between 1970 and 1976 the taxpayers, related entities and an individual that market gasoline, classified their service station operators and area managers as independent contractors for federal employment tax purposes. The Internal Revenue Service disputed that classification, determined that the personnel were employees, and assessed a tax. The taxpayers paid roughly $9,000 in partial satisfaction of their 1970 and 1971 employee tax liability, and sued the United States for a refund. The Government counterclaimed.

Two years later, the taxpayers made a compromise offer pursuant to I.R.C. § 7122

(1976). A year and several amendments to the offer passed before December 1, 1977, when the taxpayers resubmitted a proposed settlement. By a letter dated January 12, 1978, in which it made some minor revisions, largely editorial, to the taxpayers' proposal, the Government accepted. The taxpayers performed under the agreement by making an approximate $365,000 down payment on the compromised amount. A further $137,000 plus interest was payable in installments over 30 months.

In paragraph 7, the compromise agreement provides *inter alia*:

> The taxpayers will continue to treat service station operators and area managers as employees for federal income tax withholding, FICA's and FUTA purposes in all succeeding calendar quarters so long as any taxpayer compensates station operators or area managers; provided, however, that in the event that the Internal Revenue Code or any official governmental interpretation thereof is amended to treat such or similar individuals as independent contractors and not as employees, then as of and after the effective date of any such change in the Internal Revenue Code or in any official governmental interpretation thereof, taxpayers will not be required to comply with Federal income tax withholding, FICA or FUTA provisions in regard to the service station operators and/or area managers employed by them as of and after such effective date and will be entitled to appropriate refunds if such changes are given retroactive effect.

Subsequent to the taxpayers' commencement of installment payments under the agreement but before their completion of such payments, Congress enacted section 530 of the Revenue Act of 1978, P.L. 95–600, 92 Stat. 2885 (current version at I.R.C. § 3401 note (Controversies Involving Whether Individuals are Employees for Purposes of Employment Taxes)). The statute provides that a taxpayer who has a

---

* Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

"reasonable basis" for treating personnel as independent contractors shall be relieved of employment tax liability, subject to certain time period limitations. The law is retroactive and refunds of payments are authorized if the refunds are "not barred on the date of the enactment of this Act by any law or rule of law." Revenue Act of 1978 § 530(a)(4).

Following section 530's enactment, the government relieved the taxpayers of (1) their obligation to make the remaining installment payments and (2) their obligation under paragraph 7 of the compromise agreement to treat their personnel as employees, since the parties agreed that the taxpayers had a "reasonable basis" for their independent contractor view.

Unsatisfied with these developments, the taxpayers filed for a refund of amounts paid under the settlement agreement for the years 1970–1976. When the government denied this request, the taxpayers, relying on the paragraph 7 provision, brought this lawsuit in the district court. The district court held that paragraph 7 required a refund of all amounts paid under the settlement agreement.

We consider first whether, if the district court's construction of the settlement agreement is correct, the taxpayers would be permitted to obtain a refund under section 530. We think they would.

■ The legislative history of section 530 makes it clear that in the ordinary section 7122 case the taxpayer may not obtain a refund of amounts previously paid. The House Committee Report states:

> Taxpayers who have entered into final closing agreements under Code section 7121 or compromises under section 7122 with respect to employment status controversies are ineligible for relief under the bill, unless they have not completely paid their liability. Thus, for example, a taxpayer who has agreed or compromised a liability for an amount which is to be paid in installments, but who still has one or more installments to pay, is relieved of liability for such outstanding installments.

H.R.Rep.No. 95–1748, 95th Cong., 2d Sess. 6 (1978), 1978–3 (vol. 2) C.B. 629, 634.

This legislative history is consistent with the statutory language. On its face, the statute permits refunds only if they are not barred by an existing "law or rule of law." The "rule of law" which is normally applicable to a section 7122 compromise is that such compromises are final and may not be reopened in the absence of fraud or mutual mistake. See 26 C.F.R. § 301.7122–1(c).[1] Thus, in the case of payments made under an ordinary section 7122 compromise agreement, refunds would be barred by the provisions of section 530: the rule of finality governing a section 7122 compromise would constitute a "rule of law" within the meaning of that section.

Here, however, unlike the ordinary section 7122 compromise, the agreement itself contains a refund provision. Accordingly, our analysis must be different. The government neglects that difference by attempting to apply the rule of finality to the agreement before us as though there were no refund provision in the agreement. The government's argument is patently erroneous. Where the agreement itself provides for a refund upon passage of legislation retroactively changing the applicable tax law, the rule of finality does not bar a refund upon the happening of that event. The rule of finality means simply that the terms of the agreement, including the provision for refund, are final; it does not mean that payments made pursuant to the agreement are final, unless, of course, that is what the agreement provides.

Two cases construing compromise agreements make this point. In *United States v. Lane*, 303 F.2d 1 (5th Cir. 1962), the court held that where an agreement permits the government to disregard the compromised amount upon the taxpayer's breach, the government can do so without violating the rule of finality. The court reasoned that in seeking to recover the full amount it had claimed prior to the compromise, the

1. No such fraud or mutual mistake is alleged here.

government was merely exercising its right under the compromise agreement to seek full recovery upon the taxpayer's breach. The Third Circuit reached a similar result in *United States v. Feinberg*, 372 F.2d 352 (3d Cir. 1967). There, the court held that where the compromise agreement provided that the government could terminate it upon default by the taxpayer, the government was free to do so without offending or even implicating the rule of finality.

The government views these cases as "an exception to this rule of finality" and then announces that this exception "protects the government only." We reject both these innovative theories. The Third Circuit and Fifth Circuit cases are not an exception to the rule of finality at all. They stand for no more than the proposition that an agreement is an agreement and that the taxpayer is bound by its terms. So too is the government.

■ We hold that neither the rule of finality nor the provisions of section 530 bars refunds which are expressly provided for in section 7122 compromise agreements.

The remaining issue is whether the refund provision of the compromise agreement contemplates a refund of the amounts sought here. Specifically, the question is whether the settlement agreement provides for a refund of all payments made pursuant to that agreement, as the district court concluded, or only of all payments attributable to periods covered by paragraph 7 of the agreement, as the government urges. Since no payments were made by the taxpayer for periods covered by paragraph 7 of the agreement, the government must prevail if its construction of the settlement agreement is correct.

■ We first address a preliminary matter: the district court's application of the rule that an ambiguous contract term should be interpreted against the party drafting the term (the *contra proferentum* rule).[2] We think the district court erred in finding the government to be the drafting party of the refund language. While it is true that the government rearranged and edited various portions of the taxpayers' December 1, 1977 settlement proposal, there is little question that the taxpayers originated the refund provision, drafted the basic language and placed the provision in a section of their offer covering "succeeding calendar quarters."[3] The differences in language between the final agreement and the agreement as proposed by the taxpayers do not affect the outcome of the present dispute. Whichever version we examined, we would conclude that the taxpayers are not entitled to the refunds they seek here. Under these circumstances, the district court's invocation of the *contra proferentum* rule against the government was erroneous.

■ We turn now to the construction of the refund language. The decisive aspect of the refund language is its location in the

---

**2.** The *contra proferentum* rule is only invoked after a finding of ambiguity. *See generally* 4 S. Williston, *A Treatise on the Law of Contracts*, § 621 (3d ed. 1961). Here it is unclear whether the district court thought that the relevant language was ambiguous.

**3.** The taxpayers letter stated:

The taxpayers will continue to treat service station operators and area managers as employees for Federal income tax purposes ... in all succeeding calendar quarters so long as any taxpayer compensates station operators or area managers; provided, however, that in the event the Internal Revenue Code or any official governmental interpretation thereof is amended to treat such or similar individuals as independent contractors and not employees, then as of the effective date of any such change in the Internal Revenue Code or in any official governmental interpretation thereof, taxpayers will not be required to comply with Federal Income Tax withholding, FICA or FUTA provisions in regard to service station operators and/or area managers compensated by them, and the taxpayers further will be entitled to an appropriate refund of Federal income tax withholding, FICA or FUTA taxes, interest and penalties paid with respect to compensation paid to such individuals if the change in the Internal Revenue Code or official governmental interpretation thereof is given retroactive effect.

settlement document. It is a proviso to paragraph 7. That paragraph says absolutely nothing about the taxpayers' liability for the period 1970–1976. Nor does paragraph 11 of the taxpayers' letter, where the refund proposal was originally set forth. Paragraph 7 of the final agreement, like paragraph 11 of the taxpayers' letter, contains no dollar figure relating to a settlement of the 1970–1976 liability nor any provisions setting out an installment payment schedule. The various understandings regarding the 1970–1976 taxes are set out, in detail, in other parts of the agreement and the taxpayers' letter.[4]

Paragraph 7 governs the treatment of post 1976 taxes. It provides that after certain dates in 1977 (generally January 1),[5] the taxpayers will accept and comply with the IRS's characterization of their service station operators and area managers as employees for federal employment tax purposes. The refund language appears in a conditional phrase in that paragraph beginning "provided, however." The term "provided, however," conditions the promise or promises made in the sentence of which it is a part: it does not condition each promise in the entire agreement.[6] Thus, the language following "provided, however," qualifies the taxpayers' rights and obligations under paragraph 7, and relates to their post-1976 taxes; it does not qualify their rights and obligations under paragraphs 1 through 6 and does not relate to their 1970–1976 taxes.[7]

Paragraph 7 protects the taxpayers' position in two ways. First, if the Government's view of the personnel's legal status is changed to conform to the taxpayers' independent contractor contention, the taxpayers are relieved, as of the date of that change, of any further obligation under paragraph 7 to conform to the prior government view. Second, if the Government's view changes, the taxpayers are entitled to refunds of amounts paid under the provisions of paragraph 7, i.e., to a refund of all taxes paid for years after 1976. Thus, the agreement provides only for refunds of amounts paid by the taxpayers pursuant to paragraph 7. It does not provide, however, for the refund of the compromise amount agreed to be due for the years 1970–1976, i.e., the amount to be paid pursuant to paragraphs 1 through 6 of the agreement.

We conclude that the compromise agreement provides for the refund of taxes paid for the years 1977 on, but not for the years 1970–1976. In their complaint, the taxpayers do not allege that any payments were made for periods after January 1, 1977, or seek a refund of any such payments. Thus, while we hold that the refund provision of the compromise agreement is valid and enforceable, and that it is neither barred by

---

4. Thus, paragraph 1 of the government's letter of agreement is an agreement to discharge certain federal tax liens related to employment tax liabilities for 1970 and 1971. Paragraph 2 is a payment schedule. Paragraph 3 is an agreement to secure a portion of the taxpayers' indebtedness by delivery of two mortgages. Paragraph 4 states explicitly that the $511,323 payment applies to calendar quarters through June 30, 1976. Paragraph 5 is an agreement covering deductibility of certain of the payments. Paragraph 6 sets a payment for two particular quarters. Paragraph 8 binds successor entities operated by the taxpayers to the agreement. Paragraph 9 treats the federal tax status of FUTA taxes paid or to be paid to any state's Unemployment Insurance Fund.

5. The fact that the paragraph refers only to periods after January 1, 1977, is confirmed by the phrase in "all succeeding calendar quarters."

6. If conditional clauses were, as a general matter, interpreted to qualify every promise made in a document, then drafting any relatively complex agreement would become exceptionally laborious since any condition imposed would have to be limited explicitly to a particular promise or promises.

7. In paying money to settle liabilities for 1970–1976, the taxpayers did not agree to the government's characterization of their personnel for the period beginning January 1, 1977. Thus if paragraph 7 with its reference to "all succeeding calendar quarters," had not been included in the agreement, the taxpayers would have been free to continue their treatment of the operators and managers as independent contractors after settling their 1970–1976 liabilities. Of course, any such treatment might have exposed the taxpayers to further claims by the government for tax liabilities for the years after 1976.

the rule of finality nor contrary to the provisions of section 530, the provision does not entitle the taxpayers to the relief sought here.

For the reasons stated, the district court's judgment is reversed.