875 F.2d 1396
 63 A.F.T.R.2d 89-1451, 89-1 USTC P 9357
 George C. CLAPP, Jr., Margaret Clapp; Life Health Services;
Double D. Donuts Company; Gowing Enterprises, George
Clapp, Trustee; John F. Dement; Margaret A. Dement; Jim
Standley; Sharon F. Standley; Sucaba Enterprises, Inc.
Trust, Jim & Sharon Standley, Trustee; Aeri Trust
Organization, Jim & Sharon Standley, Trustee; John F.
Dement; Margaret A. Dement; New Life Health Center, Eugene
A. Burns and Linda H. Burns; Sheldon C. Deal; Reva C.
Deal; Sucaba Enterprises Trust, a Business Trust
Organization; Mogollon Trust Organization, a Business Trust
Organization; Mule Creek Trust Organization, a Business
Trust Organization; Jim Standley, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 88-7083.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 6, 1989.
Decided May 24, 1989.
 
 William A. Cohan, La Jolla, Cal., for petitioners-appellants.
 Stuart E. Horwich, Dept. of Justice, Washington, D.C., for respondent-appellee.
 Appeal from the United States Tax Court.
 Before Alfred T. GOODWIN, Chief Judge, ALARCON and NELSON, Circuit Judges.
 GOODWIN, Chief Judge:
 
 
 1
 The issues in these consolidated appeals are: (1) whether a taxpayer can enter into a stipulated settlement with the Commissioner and then appeal from the judgment entered thereon, claiming that the court did not have subject matter jurisdiction; and (2) whether the Commissioner issued valid notices of deficiency.
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 This consolidated appeal involves a tax shelter promoted by the American Law Association ("ALA"). Appellants Burns, DeMent, Clapp and Standley all operated businesses as corporations. After joining ALA they reorganized their respective businesses as "irrevocable Massachusetts-type trust entities." Under the basic ALA program, the taxpayer would transfer her business to a foreign trust. The trust would distribute its income to another foreign trust. That second trust would distribute the income to the taxpayer.
 
 
 3
 In 1978 the Commissioner began an investigation of ALA, its principals and members. The details of the ALA tax evasion program and IRS investigation are spelled out in United States v. Dahlstrom, 713 F.2d 1423 (9th Cir.1983). As part of the effort to expose the ALA scheme, the Commissioner took an aggressive enforcement stance, identifying ALA members and issuing statutory notices of deficiency.
 
 
 4
 Beginning in July 1981, the Commissioner issued audit notices to the appellants. Appellants complain that these audits were unfairly terminated without a review of their records. The Commissioner responds that the audits were terminated because appellants refused to cooperate.
 
 
 5
 From May 1982 to April 1986 the Commissioner issued notices of deficiency to appellants. The notices of deficiency disallowed numerous deductions as unsubstantiated, including all ordinary and necessary business expenses claimed by the individuals and business entities. Separate notices were sent to the individuals and to the trusts, with many of the same items of income being attributed both to the individual taxpayers and to the trusts. The notices were drafted in this manner in order to ensure that the IRS would be able to proceed regardless of whether the trusts were later found to be legitimate entities. At the same time, however, the Commissioner advised the trusts that if it was later determined that they were sham entities and that the income was therefore taxable to the individuals, then the trusts would be entitled to refunds of any overassessments.
 
 
 6
 Appellants claim these notices of deficiency demonstrate the Commissioner's willful disregard of information which was then in the custody of the IRS or readily obtainable, relating to ordinary and necessary business expenses and other itemized deductions. The Commissioner claims that the notices of deficiency merely disallowed the deductions for lack of substantiation.
 
 
 7
 The individual taxpayers and the trusts petitioned the Tax Court for a redetermination of the asserted deficiencies. During these proceedings, counsel for the taxpayers and trusts provided the Commissioner with information and documents they had earlier refused to provide, and the parties were able to negotiate settlements in the form of stipulated entries of judgment. Under the proposed settlements the trusts were treated as shams. Also, based on the documentation provided, most of the previously disallowed deductions were substantiated.
 
 
 8
 Before stipulating to entry of judgment, the taxpayers filed a motion to dismiss. This motion claimed that the notices of deficiency were invalid, as the Commissioner had not "determined" the amount of the deficiencies in accordance with Scar v. Commissioner, 814 F.2d 1363 (9th Cir.1987). Because the Tax Court can exercise jurisdiction over a case only following the issuance of a valid notice of deficiency, this argument took the form of a motion to dismiss for lack of subject matter jurisdiction. The Tax Court denied the motion, finding that the Commissioner had made "specific determinations with respect to items reported on [appellants'] respective returns, to items which should have been reported on those returns, and to related adjustments," thereby making Scar inapplicable.
 
 
 9
 Following denial of their motion, appellants stipulated to entry of judgments against them. Given the large number of entities determined to be shams and therefore not assessed tax, and given the large size of the deductions initially disallowed but later substantiated, the total amount of the stipulated judgments was $215,376.14, compared with notices of deficiency totalling $3,432,197.52.
 
 
 10
 These stipulated judgments do not address the right to appeal the Tax Court's exercise of subject matter jurisdiction, neither expressly reserving that right nor giving it up.
 
 
 11
 I. APPEALABILITY OF THE STIPULATED JUDGMENTS
 
 
 12
 (a) Standing to Appeal the Stipulated Judgments Involving the Trusts
 
 
 13
 The stipulated judgments determined that no deficiencies or penalties were due from any of the trusts. The trusts received all the relief which they can seek from the Tax Court. See Handeland v. Commissioner, 519 F.2d 327 (9th Cir.1975) (in the absence of issues concerning recurring liability only relief Tax Court can provide is finding of no deficiency). Accordingly, they have no interest in this appeal other than in ensuring the finality of the Tax Court decision.
 
 
 14
 Generally, a party cannot appeal a favorable decision. Electrical Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 242, 59 S.Ct. 860, 860, 83 L.Ed. 1263 (1939). This rule has been applied to Tax Court decisions as well. Ryan v. Commissioner, 680 F.2d 324, 325 (3d Cir.1982); W.W. Windle Co. v. Commissioner, 550 F.2d 43, 45-46 (1st Cir.1977). Given the trusts' lack of an appealable interest, they are dismissed from the appeal.
 
 
 15
 (b) Appealability of Stipulated Judgments in Order to Challenge Subject Matter Jurisdiction
 
 
 16
 A party consenting to entry of judgment generally waives the right to appeal. This rule applies to stipulated judgments of the Tax Court. Tapper v. Commissioner, 766 F.2d 401, 403 (9th Cir.1985). The relevant exception to this rule is that a party consenting to entry of judgment can appeal "where the court lacked subject matter jurisdiction to enter the judgment." Id. (citing United States v. Bechtel Corp., 648 F.2d 660, 663 (9th Cir.1981)); see also White v. Commissioner, 776 F.2d 976, 977 (11th Cir.1985); Swift & Co. v. United States, 276 U.S. 311, 324, 48 S.Ct. 311, 314, 72 L.Ed. 587 (1928). Even if seldom used, this exception is often stated, and remains basic, black letter law. See 4 Am.Jur.2d., Appeal and Error Sec. 243 (1962); 4 C.J.S., Appeal and Error Sec. 213, at 631 (1957); Note, The Consent Judgment as an Instrument of Compromise and Settlement, 72 Harv.L.Rev. 1314, 1322 (1959). Subject matter jurisdiction cannot be conferred upon the court by consent or waiver. Mansfield, C. & L. Mich. Ry. Co. v. Swan, 111 U.S. 379, 384, 4 S.Ct. 510, 512, 28 L.Ed. 462 (1884).
 
 
 17
 The Commissioner claims there is no hard and fast rule that a stipulated judgment is always subject to review or reversal on jurisdictional grounds; rather, the answer depends on the facts and circumstances of each case. Stated that broadly, however, the claim means little. The Commissioner argues that to allow appeals from settlements would undermine the settlement process, limiting the utility of stipulated judgments and resulting in numerous appeals. Because of the narrow grounds for review available, and the limited scope of review under Scar, the danger to the settlement process seems exaggerated.
 
 
 18
 The Commissioner points out the contrast between the stipulated judgments entered into with appellants and the stipulated judgment in Scar v. Commissioner, 814 F.2d at 1366. In Scar, the judgment expressly reserved the taxpayers' right to seek review of the Tax Court's exercise of jurisdiction. Here the Commissioner claims that the bargain did not include an appeal, that the Commissioner gave up much in return for avoiding the expense of further proceedings, and that the taxpayers are not living up to their bargain. This argument might be helpful to a court sitting on the woolsack, but has little value in tax cases.
 
 
 19
 While we are not unsympathetic to the Commissioner's concerns, he has cited no cases which directly support his position, and we are bound to apply the rule stated in Tapper and United States v. Bechtel Corp.
 
 
 20
 There is no clear support in the record for the Commissioner's assertion that appellants are breaking the terms of their bargain. Further, any ambiguity in the stipulations concerning waiver of the right to appeal subject matter jurisdiction must be resolved against the Commissioner as the party who prepared the stipulations. Interpetrol Bermuda Ltd. v. Kaiser Aluminum Int'l. Corp., 719 F.2d 992, 998 (9th Cir.1984); Timms v. United States, 678 F.2d 831, 834 (9th Cir.1982).
 
 
 21
 The Commissioner argues that this case is at least within the "general" subject matter jurisdiction of the Tax Court, and is thus analogous to Swift & Co., 276 U.S. at 325-26, 48 S.Ct. at 314-15. Swift & Co. involved a motion to vacate a consent decree entered years earlier. In refuting the claim that the consent decree was invalid because of the lack of any "case or controversy" at the time the decree was entered, Swift & Co. comments that the court entering the decree had jurisdiction over the "general" subject matter and the parties. However, this was not the reason that Swift & Co. foreclosed a challenge to subject matter jurisdiction. The Court noted that subject matter jurisdiction would have been open to question on a direct appeal from the consent decree. On a motion to vacate filed years later, however, the original court's determination that it had jurisdiction over the subject matter could not be reopened. Id. at 326, 48 S.Ct. at 315. Thus, while the Commissioner claims support from Swift & Co., that case instead seems to support appellants.
 
 
 22
 While the Tax Court is an Article I court, 26 U.S.C. Sec. 7441 (1982), the few cases discussing the differences between the Tax Court and an Article III court indicate that questions of Tax Court jurisdiction are to be resolved in the same manner as for an Article III court. See Anthony v. Commissioner, 66 T.C. 367 (1976) (Article III standing principles apply to Tax Court); Roderick v. Commissioner, 57 T.C. 108 (1971) (Tax Court will not issue advisory opinion). Congress has granted the Tax Court very narrow, limited jurisdiction. See Handeland, 519 F.2d 327, 329 (9th Cir.1975) (Tax Court jurisdiction severely limited by Congress and does not allow declaratory judgments); Continental Equities, Inc. v. Commissioner, 551 F.2d 74, 79 (5th Cir.1977) (Tax Court cannot order refund).
 
 
 23
 The approach of these cases suggests that this court should review the Tax Court's exercise of jurisdiction as it would review an Article III court's exercise of jurisdiction. We therefore proceed to the question whether the Tax Court properly exercised subject matter jurisdiction, a question which turns on the validity of the notices of deficiency.
 
 II. VALIDITY OF THE NOTICES OF DEFICIENCY
 
 24
 Appellants rely on Scar v. Commissioner, 814 F.2d 1363 (9th Cir.1987), for the proposition that the notices of deficiency were invalid.
 
 
 25
 In Scar, the Commissioner issued a notice of deficiency claiming a deficiency of $96,600 and disallowing certain deductions that the Commissioner stated that taxpayers had taken as a result of participation in one Nevada Mining Project. The documents attached to the notice of deficiency indicated that the tax was assessed at the maximum 70% rate "[i]n order to protect the government's interest and since your original income tax return is unavailable at this time." It was clear from the face of the notice that the Commissioner had determined the deficiency without examining the taxpayers' return. Also, as it turned out, the taxpayers had never participated in any Nevada Mining Project. The Commissioner later conceded the inaccuracy of the notice and moved to amend his answer to taxpayers' petition in order to correct the error, since taxpayers had participated in an entirely different tax shelter.
 
 
 26
 The Scar taxpayers argued that the Commissioner had not "determine[d] that there [was] a deficiency," as required by 26 U.S.C. Sec. 6212(a), prior to sending the notice of deficiency. The debate thus focused on the meaning of the term "determine" in section 6212(a) and the definition of "deficiency" at 26 U.S.C. Sec. 6211(a).[1]
 
 
 27
 The court noted that no particular form is required for a valid deficiency notice, and that the notice of deficiency need not explain how the deficiency was determined. 814 F.2d at 1367. The court further stated the general rule that courts will not "look behind a deficiency notice to question the Commissioner's motives and procedures leading to a determination." Id. at 1368.
 
 
 28
 The court reasoned that it need not defer to the Commissioner when deciding "the validity of a notice that can be determined solely by references to applicable statutes and review of the notice itself." 814 F.2d at 1368. A review of applicable statutes and the notice itself can proceed without becoming entangled in "oversight of the Commissioner's internal operations and the adequacy of procedures employed," id., or violating the rule that courts should not examine the Commissioner's motives or procedures leading to issuance of the notice. Scar pronounced that the Commissioner "must consider information that relates to a particular taxpayer before it can be said that the Commissioner has 'determined' a 'deficiency' in respect to that taxpayer." Id.
 
 
 29
 The court also quoted with approval Couzens v. Commissioner, 11 B.T.A. 1040 (1928), for the proposition that the Commissioner must make a "thoughtful and considered determination," a "bona fide official determination" and not "a mere formal demand for an arbitrary amount as to which there were substantial doubt...." Scar, 814 F.2d at 1369 (quoting Couzens, 11 B.T.A. at 1159).
 
 
 30
 The contested notice of deficiency in Scar showed on its face that the taxpayers' return had not been examined and that the maximum tax rate had been applied although not necessarily correct. The Commissioner later conceded that the notice of deficiency referred to a tax shelter unrelated to the taxpayers in any way. Scar therefore held that:
 
 
 31
 [b]ecause the Commissioner's purported notice of deficiency revealed on its face that no determination of tax deficiency had been made in respect to the Scars for the 1978 tax year, it did not meet the requirements of section 6212(a). Accordingly, the Tax Court should have dismissed the action for want of jurisdiction.
 
 
 32
 814 F.2d at 1370 (emphasis added).
 
 
 33
 (a) The Government's October 6, 1980 Memorandum Concerning the ALA and February 1982 IR Manual Tax Audit Guidelines
 
 
 34
 Appellants claim that the October 6, 1980 internal memorandum concerning the ALA tax shelters and the February 1982 IR Manual Tax Audit Guidelines show that no determination was made or intended by the Commissioner. This argument fails for several reasons. First, to even consider the ALA memorandum or 1982 Guidelines would go beyond Scar and depart from the rule that we should not "look behind a deficiency notice to question the Commissioner's motives and procedures leading to a determination." Scar, 814 F.2d at 1368 (citations omitted).
 
 
 35
 Were we nevertheless to consider such evidence, there does not appear to be anything objectionable about either the October 6, 1980 ALA memorandum or the 1982 IR Manual Tax Audit Guidelines. After discussing the need for a quick test case, the ALA memorandum merely states:
 
 
 36
 it is our opinion and the opinion of our counsel that the remaining cases must be expeditiously but thoroughly examined for maximum impact on the taxpayer with a view towards the possible imposition of the civil fraud penalty.
 
 
 37
 Similarly, the 1982 Guidelines merely state that there is a possibility that a court would refuse to disregard the trusts as legal entities and that therefore the examiner should take alternative approaches, in order more effectively to "attack" the scheme. In effect the Guidelines are saying "we are not certain how the court will interpret this, but this scheme either is illegal because of A or because of B. Agents should challenge it on both grounds A and B." This seems to be a reasonable response to a tax evasion scheme for which there is not as yet a settled legal interpretation. Any other approach would reward the tax evader who could come up with a novel scheme and force the Commissioner to take a single, consistent legal interpretation. If the courts later ruled the scheme illegal, but took a different interpretation than the Commissioner, the taxpayer would successfully evade taxes. On previous occasions we have upheld notices of deficiency which took alternative positions for precisely this reason. Malat v. Commissioner, 302 F.2d 700, 704 (9th Cir.1962); Revell, Inc. v. Riddell, 273 F.2d 649, 660 (9th Cir.1960).[2]
 
 
 38
 Appellants' other complaint with the 1982 Guidelines is that the Guidelines suggest disallowing deductions as a possible method of attacking foreign trust schemes. When read in context, this language in the Guidelines appears innocuous, merely pointing out that "[t]he taxpayer is required to provide complete substantiation and documentation of claimed deductions, expenses, and losses. The substantial fees paid to the promoters of these arrangements are not deductible...." IR Manual Tax Audit Guidelines, p (11)44 (1982). Appellants read this as an invitation to disregard the law. It seems instead a simple reminder that deductions should be scrutinized in case the trusts are upheld as legitimate entities.
 
 
 39
 (b) Failure to Consider Information Necessary to Determine the Amounts of Deficiency
 
 
 40
 Appellants claim that the Commissioner did not consider information necessary to determine the amounts of deficiency. Appellants argue that the Commissioner failed to consider deductions as required by statute, and applied the maximum tax rate to their gross incomes. This argument is at least phrased in terms of Scar.
 
 
 41
 Appellants argue that the Commissioner (1) utilized the taxpayers' gross receipts as a substitute for taxable income; and (2) imposed the maximum tax rates and penalties to produce amounts between 1000% and 2000% of any potentially bona fide deficiency.
 
 
 42
 Nevertheless, appellants do not show that the Commissioner failed to "determine" a deficiency. The notices of deficiency in the record make absolutely clear that the Commissioner did examine appellants' returns, and did at least consider appellants' deductions. He merely disallowed them. For example, the notice of deficiency sent to the Standleys for tax years 1978, 1979, and 1980 indicates on the attached Form 5278 that adjustments to income are being made for trust income, business expenses, and medical expenses. The forms attached explain for each disallowed deduction that "[e]xpenses in the amount of [dollar amount] for [trust name] with respect to the income of [dollar amount] are not allowed due to the failure to establish that said expenses were incurred and are deductible." The other notices are similar, and state that deductions are being disallowed for lack of proof that the amounts represent ordinary and necessary expenses or were expended for the purpose designated.
 
 
 43
 Unlike Scar, the notices of deficiency make clear that the Commissioner did examine each return, did consider the deductions, and did attribute trust income to the taxpayers from sham trusts related to the particular taxpayer, not from unrelated entities. Also unlike Scar, the notices did not state that the deficiency was calculated based upon the arbitrary selection of the maximum tax rate. The notices of deficiency are valid under Scar.
 
 
 44
 Furthermore, as the Tax Court has since pointed out, Scar did not even require any affirmative showing by the Commissioner that a determination set forth in an alleged notice of deficiency was made on the basis of the taxpayers' return. Only where the notice of deficiency reveals on its face that the Commissioner failed to make a determination is the Commissioner required to prove that he did in fact make a determination. Campbell v. Commissioner, 90 T.C. 110 (1988). Here, nothing on the face of the notice reveals that the Commissioner failed to make a determination.
 
 
 45
 While appellants place great weight on the disparity between the amounts of the notices of deficiency and the amounts of deficiency in the stipulated judgments, much of the disparity was the result of attributing income to both the individuals and the trusts in the alternative, an acceptable practice. As for the remaining disparity, the notices of deficiency are perfectly clear: the taxpayers refused to provide information substantiating their deductions at the time of audit, and the deductions were therefore disallowed. During the Tax Court proceedings, appellants substantiated their deductions and the Commissioner thereafter willingly stipulated to deficiencies of far lower amounts.
 
 
 46
 Interspersed throughout appellants' briefs are arguments that fundamental fairness, due process, and section 6212(a) all require greater judicial scrutiny of the determination of deficiency. Appellants' case is factually far weaker than Scar and they ask that the court take a harder look than required by Scar. We reiterate that this is not a case where the Commissioner failed to examine appellants' returns or to "determine" a deficiency. The facts of this case would better fit an argument that the Commissioner made the determination for improper reasons or following improper procedures. Appellants ask the court to question the Commissioner's motives and procedures, to review the history of the Commissioner's attempt to "attack" the ALA tax shelters and perform a careful review of the Commissioner's actions vis-a-vis appellants in order to ensure that the "determinations" were not arbitrary. Appellants try to show the Commissioner's vindictiveness by referring to allegedly revealing events from their audits, such as agents' failure to answer their inquiries after Mrs. Standley insisted on tape recording the proceedings.
 
 
 47
 It may be, as appellants assert, that the Commissioner could have verified the deductions as ordinary and necessary business expenses through reports filed with the IRS and other governmental agencies. It would nevertheless be unwise to place such a burden on the Commissioner when faced with taxpayers who refuse to cooperate or provide the necessary information at their audit examinations. The Commissioner points out that it was taxpayers' duty to substantiate their deductions at the time of the audit examination and that the taxpayers failed to do so.
 
 
 48
 Appellants' argument for greater substantive review of the Commissioner's "determination" mistakes the nature of the notice of deficiency. The notice of deficiency does not result in final liability on the part of taxpayer. If the taxpayer files a petition in the Tax Court, liability will be adjudicated prior to payment. 26 U.S.C. Sec. 6213.[3] The notice of deficiency merely hails the taxpayer into court. The Tax Court has as its purpose the redetermination of deficiencies, through a trial on the merits, following a taxpayer petition. It exercises de novo review. See, e.g., Raheja v. Commissioner, 725 F.2d 64, 66 (7th Cir.1984). Issuing a notice of deficiency is in many ways analogous to filing a civil complaint.
 
 
 49
 It is true that the Tax Court considers the Commissioner's determination presumptively correct, and places on the taxpayer the burden of going forward and the burden of persuasion. Sager Glove Corp. v. Commissioner, 311 F.2d 210, 211 (7th Cir.1962). Yet, if the taxpayer establishes that the Commissioner's determination is arbitrary, courts generally shift the burden onto the Commissioner, putting the Commissioner in the same position as a civil plaintiff. See Herbert v. Commissioner, 377 F.2d 65, 69 (9th Cir.1967); see also United States v. Janis, 428 U.S. 433, 440-443, 96 S.Ct. 3021, 3025-27, 49 L.Ed.2d 1046 (1976) (suit for refund). Given the function of the notice of deficiency, this is the proper remedy for arbitrariness. Courts do not invalidate the notice, but shift the burden to the Commissioner. Suarez v. Commissioner, 58 T.C. 792, 814 (1972) (citing authorities), overruled on other grounds, United States v. Janis, 428 U.S. 433, 456-58, 96 S.Ct. 3021, 3033-34, 49 L.Ed.2d 1046 (1976).
 
 
 50
 The availability of litigation costs lessens even further any burden a taxpayer suffers from an inaccurate determination.
 
 
 51
 Reasonable litigation costs are awardable in a civil tax proceeding brought against the United States in the Tax Court if the taxpayer has "substantially prevailed with respect to the amount in controversy," [26 U.S.C.] Sec. 7430(c)(2)(A)(ii)(I) and "establishes that the position of the United States in the civil proceeding was unreasonable." Sec. 7430(c)(2)(A)(i) (1982).
 
 
 52
 Comer v. Commissioner, 856 F.2d 775, 777 (6th Cir.1988).
 
 
 53
 The existence of remedies for an inaccurate determination of deficiency makes greater substantive review of the Commissioner's "determination" inappropriate. The courts carefully review administrative action for arbitrariness when an agency exercises final, statutory decisionmaking authority, such as an agency rulemaking. In tax cases such as this, the Tax Court or United States District Court review the Commissioner's decision on the merits de novo. Too detailed a substantive review of the Commissioner's threshold "determination," undertaken solely for purposes of exercising subject matter jurisdiction would be duplicative and burdensome on the courts and the Commissioner.
 
 
 54
 The judgments of the Tax Court are affirmed as to the individual taxpayers. The appeals of the trusts are dismissed.
 
 
 
 [1]
 The statute defines "deficiency" as the amount by which tax due exceeds the amount shown as the tax by the taxpayer upon his return (provided that a return showing an amount has been filed), plus previously assessed deficiencies over rebates made. Scar, 814 F.2d at 1368
 
 
 [2]
 In their Supplemental Citation of Authority, the appellants refer us to Comer v. Commissioner, 856 F.2d 775, 776-77 (6th Cir.1988), in support of their argument that the Commissioner cannot take alternative positions in determining a deficiency. We note that, rather than simply providing the citation to Comer and referring us to the portions of their briefs to which it is relevant, the appellants have used their Supplemental Citation to spell out in considerable detail what they believe to be the important similarities between Comer and this case. By doing so, the appellants have failed to comply with Fed.R.App.P. 28(j), which provides that a supplemental citation of authority "shall without argument state the reasons for the supplemental citations" (emphasis added). Accordingly, we need not consider any of the materials contained in appellant's supplemental citation
 At any rate, we conclude that Comer does not conflict with our decision in this case. Comer does not stand for the proposition that the Commissioner may never take alternative positions. In Comer, both of the Commissioner's alternative positions were without support, and the Commissioner ultimately conceded that the petitioners were not liable for any amount under any theory. Comer thus does not disturb the well-established rule that the Commissioner may take alternative positions, so long as both positions are plausible. Revell, Inc. v. Riddell, 273 F.2d 649, 660 (9th Cir.) cert. denied, 364 U.S. 835, 81 S.Ct. 52, 5 L.Ed.2d 60 (1960). In the present case, both of the Commissioner's theories were plausible, and the petitioners stipulated that they were liable for a deficiency under the theory that the trusts were shams.
 Furthermore, in Comer, the question before the court was not whether the notices of deficiency were valid, but whether the Commissioner had acted unreasonably so as to entitle the taxpayer to litigation costs. Comer had nothing to do with whether alternative positions invalidate a notice of deficiency.
 
 
 [3]
 Even if the taxpayer does not petition the Tax Court, other avenues of review remain available. He may pay the deficiency, claim a refund, and then sue if the refund is denied. 28 U.S.C. Sec. 1346(a)(1)