T.C. Memo. 1997-149


UNITED STATES TAX COURT


BENNESS M. RICHARDS AND JANE RICHARDS, Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8922-87.                    Filed March 24, 1997.


Robert Alan Jones, for petitioners.[1]

Pamela S. Wilson and Richard G. Goldman, for respondent.


MEMORANDUM OPINION

BEGHE, Judge:  This matter is before the Court on
petitioners' Motion for Leave to File Motion to Vacate Decision.
The issue to be decided concerns the validity of the notice of

    [1]  Although Luis C. DeCastro, Esq., continues to be listed
as counsel of record in docket No. 8922-87, he did not
participate in the filing or prosecuting of the motion that is
the subject of this opinion.

deficiency and whether respondent "determined" a deficiency in petitioners' Federal income tax liability within the meaning of section 6212(a).[2]

Background

On or about June 25, 1979, Benness M. Richards and Jane Richards filed a joint Federal income tax return for 1978 reporting adjusted gross income of $86,574, taxable income of $11,975, and tax due of $3,495.  In computing their taxable income, petitioners claimed an interest deduction attributable to their participation in certain programs managed by Henry Kersting.  Because petitioners' 1978 tax return is not part of the record in this case, we are unable to determine the specific amount of the interest deduction that petitioners claimed on their return.

On January 22, 1981, following an undercover investigation, the IRS searched Mr. Kersting's offices pursuant to a search warrant issued by the U.S. District Court for the District of Hawaii.  Among the items seized during the search were lists identifying, by name and address, approximately 1,800 of Mr. Kersting's clients, and schedules showing the amounts of interest purportedly paid by each client to one or more of several Kersting companies during the taxable years 1977, 1978, and 1979.

---

[2] Section references are to the Internal Revenue Code, as amended.  Unless otherwise indicated, rule references are to the Tax Court Rules of Practice and Procedure.

The circumstances of the search of Mr. Kersting's offices are described in the Court's opinion in Dixon v. Commissioner, 90 T.C. 237 (1988) (Dixon I).

On April 15, 1982, respondent issued a joint notice of deficiency to petitioners determining a deficiency in their Federal income tax for 1978 in the amount of $47,580.75 and an addition to tax under section 6653(a) in the amount of $2,379.[3] The notice of deficiency, in a form apparently used by respondent in issuing notices of deficiency to a number of taxpayers with Kersting-related adjustments, states in pertinent part:

EXPLANATION OF ADJUSTMENTS

1. It is determined that the following amounts claimed on your 1978 income tax return as interest deductions are not allowable:

| Amount | Purported Payee |
| --- | --- |
| $67,972.50 | Any entity owned, associated with, or controlled, either directly or indirectly, by Henry Kersting |

This disallowance is based on the determination that the transaction giving rise to the claimed interest deduction are shams. This disallowance is further based upon your failure to establish that the above amounts were paid or properly accrued, or that the transactions purportedly generating the claimed amounts resulted either in any bona fide indebtedness or in any enforceable and bona fide obligation to pay

---

[3] The notice of deficiency was issued approximately 70 days prior to the expiration of the normal 3-year period of limitations applicable to the assessment of Federal income taxes. Sec. 6501(a).

compensation for use or forbearance of money on indebtedness within the meaning of I.R.C. Section 163.

Furthermore, if it is established that any portion of the above disallowed "interest" is a properly allowable deduction, it is further determined that such interest constitutes interest in investment indebtedness and deduction of such amounts is limited under the provisions of I.R.C. 163(d).

Further, and in support of a portion of the determined deficiency, if you establish that you are entitled to the above-mentioned interest deduction, it is determined that you improperly failed to report the income resulting from the same transaction.

2. It is determined that part of the underpayment of tax for the taxable year 1978 is due to your negligent or intentional disregard of the rules and regulations. Consequently, the 5 percent addition to the tax is charged for 1978 as provided by Section 6653(a) of the Internal Revenue Code.

A simple arithmetical calculation reveals that respondent computed petitioners' tax deficiency by applying a tax rate of 70 percent, which was the highest tax rate imposed for 1978.[4]

On July 12, 1982, Lu N. Nevels, Jr., Esq., filed a joint petition for redetermination (assigned docket No. 17445-82) on behalf of a large group of taxpayers, including petitioners, who had received notices of deficiency with Kersting-related

---

[4] Inasmuch as there were no other adjustments in the notice of deficiency, and assuming that the adjusted gross income that petitioners reported is correct, respondent erred in computing petitioners' tax liability for 1978 using a 70-percent tax rate, which was only applicable with respect to taxable income exceeding $203,200 for joint filers.

- 5 -

adjustments.[5] Disputing the $67,972.50 figure used in the notice of deficiency, the petition includes an allegation that the interest deduction reported on petitioners' 1978 income tax return attributable to their participation in Kersting programs was only $38,523.[6] In addition, the petition includes an allegation that the notice of deficiency issued to petitioners is arbitrary and capricious.

On September 13, 1982, respondent filed an answer to the petition. Specifically, respondent denied for lack of sufficient information the allegation respecting the specific amount of the interest deduction reported on petitioners' 1978 tax return and denied without qualification the allegation that the notice of deficiency is arbitrary and capricious.

On January 27, 1987, Luis C. DeCastro, Esq. (Mr. DeCastro), filed an entry of appearance on behalf of petitioners in docket No. 17445-82. In the interim, on December 23, 1986, respondent's counsel assigned to the Kersting project, Kenneth McWade, Esq. (Mr. McWade), had mailed Mr. DeCastro a letter enclosing proposed decision documents for petitioners and several of his other clients with cases before the Court involving Kersting-related

---

[5] Petitioners resided in Woodland Hills, California, at the time the petition was filed.

[6] The petition identifies the payees as Atlas Funding Corp., Fargo Acceptance Corp., Federated Finance Co., Forbes Acceptance Corp., and Mahalo Acceptance Corp.

adjustments. On December 30, 1986, Mr. DeCastro executed a stipulated decision on behalf of petitioners that states as follows:

### DECISION

Pursuant to agreement of the parties in the above-entitled case, it is

ORDERED AND DECIDED: That there is a deficiency in income tax due from the petitioners for the taxable year 1978 in the amount of $23,000.00;

That there are no additions to the taxes due from the petitioners for the taxable year 1978, under the provisions of I.R.C. sec. 6653(a); and

That there are no additions to the taxes due from the petitioners for the taxable year 1978, under the provisions of I.R.C. sec. 6621(d).

On the same date, Mr. DeCastro mailed a check to Mr. McWade, signed by petitioners and made payable to the IRS in the amount of $53,571, representing $23,000 in tax and $30,571 in interest. Mr. McWade executed the stipulated decision on April 27, 1987, and mailed the document to the Court.

On March 30, 1987, Mr. McWade filed a Motion to Sever petitioners' case from docket No. 17445-82. Shortly thereafter, the Court granted the motion, severed petitioners' case from docket No. 17445-82, and assigned the case docket No. 8922-87. On May 8, 1987, the Court entered the parties' stipulated decision as described above in docket No. 8922-87.

Petitioners did not file a notice of appeal or a timely motion to vacate or revise the decision entered May 8, 1987. Consequently, the decision became final on August 6, 1987, 90 days after the decision was entered.  Sec. 7481(a)(1).

During the period that petitioners' case was docketed with the Court, 14 dockets and 8 petitioners with Kersting-related adjustments were selected as "test" cases for trial.[7]  Mr. McWade served as respondent's lead counsel during the trial of the test cases.  One of the taxpayers selected as a test case, John Thompson, was represented at trial by Mr. DeCastro.

Following a trial on the merits of the test cases, the Court issued its Memorandum Opinion sustaining virtually all of respondent's determinations in each of the test cases.  See Dixon v. Commissioner, T.C. Memo. 1991-614 (Dixon II).  As a preliminary matter, the Court rejected the test-case taxpayers' argument, similar to that raised here, that the notices of deficiency issued to them were null and void on the ground that the Commissioner failed to make a determination as required by Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987), revg. 81

---

[7]  More than 1,800 cases were filed with this Court by participants in the Kersting plans seeking redeterminations of the deficiencies determined by respondent (the Kersting group). The bulk of the more than 1,300 remaining docketed cases in the Kersting group are covered by "piggyback agreements" in which the taxpayer(s) and respondent stipulated to be bound by the Court's opinion in the test cases.  Hundreds of non-test cases in the Kersting group have been disposed of, like the case at hand, by entry of a stipulated decision.

T.C. 855 (1983).  The Court distinguished the notices of deficiency issued to the test-case taxpayers from the notice of deficiency at issue in Scar on the ground that adjustments in the notices of deficiency could be connected with items reported in the test-case taxpayers' tax returns.

The Court's decision in Dixon II was vacated and remanded on appeal to the U.S. Court of Appeals for the Ninth Circuit in Dufresne v. Commissioner, 26 F.3d 105 (9th Cir. 1994). Specifically, in response to respondent's post-trial admission that Mr. McWade had entered into secret settlement agreements with two of the test case taxpayers, John Thompson and John Cravens, prior to the trial of the test cases, the Court of Appeals remanded the test cases to this Court with instructions to conduct an evidentiary hearing "to determine the full extent of the admitted wrong done by the government trial lawyers."  Id. at 107.  The Court of Appeals, citing Arizona v. Fulminante, 499 U.S. 279, 309 (1991), directed the Court to consider "whether the extent of the misconduct rises to the level of a structural defect voiding the judgment as fundamentally unfair, or whether, despite the Government's misconduct, the judgment can be upheld as harmless error."  Id.  In carrying out this mandate, this

Court also was directed to consider on the merits all motions of intervention filed by parties affected by Dixon II. Id.[8]

Upon remand, the Court gave effect to the direction of the Court of Appeals regarding intervention by allowing a number of non-test-case taxpayers who had previously signed stipulations to be bound by the decision in Dixon II to participate in the evidentiary hearing. Robert Alan Jones, Esq. (Mr. Jones), entered his appearance on behalf of a group of non-test-case taxpayers allowed to participate in this fashion.

During the evidentiary hearing, which was held at a special trial session of the Court in Los Angeles in May-June 1996,[9] Mr. Jones expressed concern that, in addition to the settlement with John Thompson, Mr. McWade may have entered into settlements with other clients of Mr. DeCastro on terms more favorable than the standard Kersting project settlement offer. In this regard, Mr. Jones requested respondent's counsel, Mary Elizabeth Wynne, Esq. (Ms. Wynne), to disclose the details of settlements entered into with Mr. DeCastro's clients, including petitioners. In a letter

---

[8] The appellate panel in Dufresne v. Commissioner, 26 F.3d 105 (9th Cir. 1994), vacating and remanding T.C. Memo. 1991-614, issued an order stating that the panel would retain jurisdiction over any subsequent appeal.

[9] Although the evidentiary hearing has been held, the filing of various post-hearing motions, and as yet unresolved disagreements among the participants over post-hearing stipulations of fact, have delayed the setting of a schedule for the filing of briefs on the various issues raised by the mandate of the Court of Appeals in Dixon II.

dated September 3, 1996, Ms. Wynne attempted to explain that

petitioners did not receive special treatment from Mr. McWade in

the settlement of their case as follows:

> As we discussed on the telephone, I have received authorization from Mr. and Mrs. Richards to disclose the attached copy of the computer transcript of the Richards' account for 1978. As you are aware, neither the government nor the Richards has a copy of the Richards' 1978 return. But the information on the enclosed transcript reflects the following information concerning the 1978 return filed by the Richards.

> The 1978 tax return was filed June 25, 1979, and showed an income tax liability of $3,495. Advance or estimated payments of $8,931 were credited to the account on April 15, 1979. On June 25, 1979, a refund of $5,489.09 was generated to the Richards (along with interest of $53.09). On December 31, 1986, the Richards's account was credited with a tax payment of $23,000 and interest of $30,571. The tax of $23,000 and interest of $30,571 were assessed on October 5, 1987 (which date was within 60 days of the date the Tax Court decision became final).

> In addition to showing the above information, the enclosed transcript also shows that the Richards's reported adjusted gross income of $86,574 on their 1978 return, and taxable income of $11,975. The maximum tax rate in 1978 was 70 percent, but that rate did not apply until taxable income reached $203,200 for joint filers. Accordingly, even without allowance of the Kersting related deductions, the Richards's taxable income in 1978 was not high enough to trigger the maximum tax rate of 70 percent that was used in the notice of deficiency. Thus, any comparison of the amount asserted in the notice with the amount on decision must be made after adjusting for the proper tax rate.

> As the Court noted during the hearing, the petition filed on behalf of the Richards alleged that Kersting related deductions were only $38,523. Assuming the petition is correct, the tax on taxable income of $50,498 ($11,975 per the return and $38,523 disallowed Kersting deductions) is $15,709, which

produces a deficiency of $12,214 ($15,709 less the $3,495 reported on the return). A seven percent reduction of this deficiency results in a deficiency of $11,359, far less than the deficiency in the decision of $23,000.

The explanation for this discrepancy lies in the fact that several Kersting participants received notices of deficiency based on a reconstruction of records obtained from Mr. Kersting's office in 1981. For the year 1978, the statute of limitations would have expired in 1982. Thus, the notice may have been issued without access to the original return. Whatever the reason for the discrepancy, it is clear that the Richards did not receive any kind [of] special treatment from Mr. McWade.

On November 8, 1996, Mr. Jones filed an entry of appearance on behalf of petitioners and the Motion for Leave to File Motion to Vacate Decision that is before the Court in this proceeding.[10] Petitioners contend that Ms. Wynne's letter dated September 3, 1996, demonstrates that respondent did not examine their 1978 tax return prior to issuing the notice of deficiency and that the notice of deficiency was "wrongfully and fraudulently issued". Relying on Scar v. Commissioner, supra, petitioners maintain that the Court should conclude that the notice of deficiency is invalid on the ground that respondent did not make a determination as required under section 6212.

Respondent filed an objection to petitioners' motion. Relying on Kantor v. Commissioner, 998 F.2d 1514, 1521-1522 (9th

---

[10] We observe that Mr. Jones' original theory that petitioners received a more favorable settlement than the standard Kersting project settlement has no particular relevance to whether the notice of deficiency is valid.

Cir. 1993), and <u>Clapp v. Commissioner</u>, 875 F.2d 1396, 1402 (9th Cir. 1989), respondent contends that validity of the notice of deficiency turns on whether the notice reveals on its face that respondent failed to make a determination. Respondent asserts that the notice of deficiency is valid under this standard.

<u>Discussion</u>

In order to put in proper context petitioners' Motion for Leave to File Motion to Vacate Decision, we begin with a brief summary of the general principles governing the finality of Tax Court decisions.

Section 7481(a)(1) provides the general rule that a decision of the Tax Court becomes final upon expiration of the time to file a notice of appeal. Section 7483 provides that a notice of appeal generally must be filed within 90 days after a decision is entered. However, the 90-day appeal period may be extended if the taxpayer files a timely motion to vacate or revise the decision. Fed. R. App. P. 13(a). Pursuant to Rule 162, a motion to vacate or revise a decision must be filed within 30 days after the decision is entered, unless the Court allows otherwise.

As indicated, petitioners did not file a notice of appeal or a timely motion to vacate or revise the decision that had been entered in this case on May 8, 1987. Accordingly, the decision became final on August 6, 1987. See secs. 7459(c), 7481(a)(1).

The Tax Court generally lacks jurisdiction to vacate a final decision. Abatti v. Commissioner, 859 F.2d 115, 117 (9th Cir. 1988), affg. 86 T.C. 1319 (1986); Lasky v. Commissioner, 235 F.2d 97, 100 (9th Cir. 1956), affd. per curiam 352 U.S. 1027 (1957). The Court will vacate a final decision only in certain narrowly circumscribed situations. For instance, this Court and some Courts of Appeals have ruled that this Court may vacate a final decision if that decision is shown to be void, or a legal nullity, for lack of jurisdiction over either the subject matter or the party, see Billingsley v. Commissioner, 868 F.2d 1081, 1084-1085 (9th Cir. 1989); Abeles v. Commissioner, 90 T.C. 103, 105-106 (1988); Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999, 1002 (1978), or if the decision was obtained through fraud upon the Court, see Abatti v. Commissioner, supra; Senate Realty Corp. v. Commissioner, 511 F.2d 929, 931 n.1 (2d Cir. 1975); Stickler v. Commissioner, 464 F.2d 368, 370 (3d Cir. 1972); Casey v. Commissioner, T.C. Memo. 1992-672. In addition, the Court of Appeals for the Fifth Circuit has indicated that the Tax Court has the power in its discretion, in extraordinary circumstances, to vacate and correct a final decision where it is based upon a mutual mistake of fact. See La Floridienne J. Buttgenbach & Co. v. Commissioner, 63 F.2d 630 (5th Cir. 1933). But cf. Harbold v. Commissioner, 51 F.3d 618, 621-622 (6th Cir. 1995).

Petitioners' motion is based on the theory that the notice of deficiency issued to them was invalid, and, therefore, the Court was never vested with jurisdiction to enter a decision in the case.[12]

The Court's jurisdiction to redetermine a deficiency is dependent upon issuance of a valid notice of deficiency and a timely filed petition. Rule 13(a), (c); Levitt v. Commissioner, 97 T.C. 437, 441 (1991); Monge v. Commissioner, 93 T.C. 22, 27 (1989); Normac, Inc. v. Commissioner, 90 T.C. 142, 147 (1988). Section 6212(a) expressly authorizes the Commissioner, after determining a deficiency, to send a notice of deficiency to the taxpayer by certified or registered mail.

It is well settled that no particular form is required for a statutory notice of deficiency. Jarvis v. Commissioner, 78 T.C. 646, 655 (1982).[13] At a minimum, however, the notice must

---

[12] There is no evidence in the record that the stipulated decision entered in petitioners' case represents a fraud upon the Court. See Abatti v. Commissioner, 859 F.2d 115, 118-119 (9th Cir. 1988) (defining fraud upon the court as "an unconscionable plan or scheme which is designed to improperly influence the court in its decision" or a fraudulent act that "prevents the opposing party from fully and fairly presenting his case"), affg. 86 T.C. 1319 (1986).

[13] Sec. 7522(a), applicable to notices mailed on or after January 1, 1990, provides in pertinent part that a notice of deficiency

shall describe the basis for, and identify the amounts (if any) of, the tax due, interest, additional amount, additions to the tax, and assessable penalties included in such notice. An inadequate description under the

indicate that the Commissioner has determined a deficiency in tax in a definite amount for a particular taxable year and that the Commissioner intends to assess the tax in due course.  Olsen v. Helvering, 88 F.2d 650, 651 (2d Cir. 1937); Perlmutter v. Commissioner, 44 T.C. 382, 400 (1965), affd. 373 F.2d 45 (10th Cir. 1967).  Absent exceptional circumstances, we will not look behind a notice of deficiency to examine the evidence used by the Commissioner in the determination of a deficiency.  Scar v. Commissioner, 814 F.2d at 1368; Greenberg's Express v. Commissioner, 62 T.C. 324, 327-328 (1974).

In Scar v. Commissioner, supra, the taxpayers, after receiving a deficiency notice that disallowed a deduction from a partnership with which the taxpayers had no connection, contended that the Commissioner had not "determined" a deficiency against them as contemplated under section 6212(a).  The notice of deficiency included as an attachment an explanation of the adjustments that stated in pertinent part:  "In order to protect the government's interest and since your original income tax return is unavailable at this time, the income tax is being assessed at the maximum tax rate of 70%."  Id. at 1365.

After filing a petition with the Court, the taxpayers filed a motion to dismiss for lack of jurisdiction.  We held the

---

preceding sentence shall not invalidate such notice.

deficiency notice to be valid and denied the taxpayers' motion to dismiss. Id. at 1366.

In analyzing the issue on appeal, the majority of the panel of the Court of Appeals for the Ninth Circuit concluded that the Commissioner must consider information relating to a particular taxpayer before it can be said that the Commissioner has determined a deficiency with respect to that taxpayer. Id. at 1368. More specifically, the Court indicated in a footnote that, in order to determine a deficiency against a taxpayer based upon a tax shelter adjustment, the Commissioner cannot rely solely upon an examination of the tax return of the tax shelter entity but must also examine the taxpayer's return to see whether the taxpayer in fact claimed a deduction with respect to the particular tax shelter. Id. at 1367 n.6. With this standard in mind, the Court concluded that the deficiency notice was invalid under section 6212(a) because the notice on its face revealed that the Commissioner had not reviewed the taxpayers' return or otherwise made a determination respecting the taxpayers' liability for the particular taxable year. Id. at 1370.

The Scar issue subsequently resurfaced in this Court in Campbell v. Commissioner, 90 T.C. 110 (1988). In Campbell, the Commissioner mailed a notice of deficiency to the taxpayers including: (1) The traditional cover letter containing boilerplate language identifying the package as a notice of

deficiency and listing the taxable year as well as the amounts of the deficiency and additions to tax, (2) a Form 5564 "Notice of Deficiency-Waiver", and (3) several pages purportedly explaining the adjustments. Although the cover letter and the waiver form clearly related to the taxpayers, the Commissioner had inadvertently attached to the notice a seven-page explanation of adjustments for an unrelated taxpayer. In response, the taxpayers filed a petition (and later a motion to dismiss) attacking the validity of the notice of deficiency under Scar. Id. at 111.

Upon review of the matter, we distinguished Scar and denied the taxpayers' motion to dismiss. Specifically, we noted that the first two pages of the deficiency notice clearly referred to the taxpayers as the subjects of the notice. While the explanation of adjustments certainly caused confusion, there was no indication in the notice that the Commissioner had failed to consider information relating to the taxpayers in making the deficiency determination. Id. at 113. Viewing the record as a whole, we concluded that the Commissioner had determined a deficiency against the taxpayers and inadvertently attached the wrong computational sheets to the notice of deficiency. Id.

Subsequent to Campbell, the Court of Appeals for the Ninth Circuit revisited Scar in Clapp v. Commissioner, 875 F.2d 1396 (9th Cir. 1989). In Clapp, separate notices of deficiency were

sent to both individual taxpayers and to related trusts, with many of the same items of income being attributed to both the individuals and the trusts.  Prior to executing settlement agreements on the basis of which decisions were entered by this Court, the individual taxpayers filed a motion to dismiss, arguing that the notices mailed to them were invalid because the Commissioner had failed to consider information necessary to determine the amounts of the deficiencies.  Id. at 1398.  We denied the taxpayers' motion on the ground that the Commissioner made specific determinations with respect to items reported on the taxpayers' returns.

In rejecting the taxpayers' argument on appeal, the Court of Appeals concluded:

> Unlike Scar, the notices of deficiency make clear that the Commissioner did examine each return, did consider the deductions, and did attribute trust income to the taxpayers from sham trusts related to the particular taxpayer, not from unrelated entities.  Also unlike Scar, the notices did not state that the deficiency was calculated upon the arbitrary selection of the maximum tax rate.  The notices of deficiency are valid under Scar.

> Furthermore, as the Tax Court has since pointed out, Scar did not even require any affirmative showing by the Commissioner that a determination set forth in an alleged notice of deficiency was made on the basis of the taxpayers' return.  Only where the notice of deficiency reveals on its face that the Commissioner failed to make a determination is the Commissioner required to prove that he did in fact make a determination.  Campbell v. Commissioner, 90 T.C. 110 (1988).  Here, nothing on the face of the notice reveals that the Commissioner failed to make a determination.  [Id. at 1402; emphasis added.]

The Court of Appeals in Clapp went on to observe that the availability of remedies for an arbitrary or inaccurate deficiency determination, such as shifting the burden of proof to the Commissioner and/or awarding litigation costs, would make greater substantive review "of the Commissioner's threshold 'determination', undertaken solely for purposes of exercising subject matter jurisdiction * * * duplicative and burdensome on the courts and the Commissioner." Id. at 1403.

Applying these principles to the present case, it is clear that the notice of deficiency concerns petitioners' tax liability for 1978 and that the deficiency is attributable to respondent's determination to disallow an interest deduction in the amount of $67,972.50 with respect to petitioners' participation in Kersting programs. Petitioners do not dispute that they reported a Kersting-related interest deduction on their 1978 income tax return. Consequently, we find that respondent considered information relating to petitioners' 1978 tax liability in preparing the notice of deficiency. Scar v. Commissioner, 814 F.2d at 1370. In addition, unlike Scar, and cases such as Kong v. Commissioner, T.C. Memo. 1990-480, and Watson v. Commissioner, T.C. Memo. 1993-42, the notice does not contain a statement that respondent issued the notice without examining petitioners' tax return in order to protect the Government's interest. Under the circumstances, the notice of deficiency does not reveal on its

face that respondent failed to make a determination with respect to petitioners' tax liability, and we so hold.

Petitioners' contention that the notice of deficiency is invalid because respondent "did not rely on actual taxpayer information to make an independent determination of a deficiency" is misplaced. As stated in Clapp v. Commissioner, supra at 1402, unless the notice of deficiency reveals on its face that the Commissioner failed to make a determination, the Commissioner is not required to make an affirmative showing that a determination was made on the basis of the taxpayers' return. In short, the analysis outlined in Clapp begins and ends in this case with our holding that the notice of deficiency is facially valid.

Moreover, the present case, like Clapp, is better suited to an argument that respondent's determination was arbitrary or simply incorrect. In fact, the petition filed on behalf of petitioners contained an allegation that the notice of deficiency was arbitrary. Of course, it is well settled that an arbitrary determination does not render a notice of deficiency invalid. The taxpayer's remedies with respect to an arbitrary or incorrect notice of deficiency are to move to shift to the Commissioner the burden of going forward with the evidence, or, in appropriate circumstances, to move for litigation costs. Id. at 1403. Although the record does not disclose whether Mr. DeCastro pursued any of these points with Mr. McWade in settlement

negotiations, or whether he attempted to resolve with Mr. McWade the discrepancy between the $67,972.50 of Kersting interest deductions disallowed by the notice of deficiency and the lower amount of $38,523 alleged by the petition as having been claimed on the return, petitioners did agree to a deficiency substantially less than that determined by respondent.

In sum, the stipulated decision that Mr. DeCastro executed on petitioners' behalf is now final, and petitioners have failed to persuade us that the notice of deficiency issued to them is invalid.  It follows that we lack jurisdiction to vacate the decision in this case.

To reflect the foregoing,

> An order will be issued
> denying petitioners' Motion for
> Leave to File Motion to Vacate
> Decision.